379 So.2d 651 (1980)
STATE of Florida et al., Appellants,
v.
CITY OF MIAMI, a Municipal Corporation, Appellee.
No. 58088.
Supreme Court of Florida.
January 24, 1980.
*652 Janet Reno, State's Atty., and Eric William Hendon, Asst. State's Atty., Miami, for appellants.
George F. Knox, Jr., City Atty., and Jose B. Alvarez, Deputy City Atty., Miami, Lucien C. Proby, Jr. of Proby & Adkins, Coral Gables, and Brown, Wood, Ivey, Mitchell & Petty, New York City, for appellee.
OVERTON, Justice.
This is a direct appeal from a final judgment validating revenue bonds in Dade County. We have jurisdiction.[1] The questions we must decide are whether the issuance of the revenue bonds to finance the convention center-garage serves a valid municipal or public purpose and whether the City properly exercised its financing power.
In validating these revenue bonds, the trial court found the following facts. In 1964, the City Commission of Miami adopted a resolution providing for the issuance of $4,500,000 in convention center bonds. These bonds were sold in 1969, but construction of the convention center was delayed indefinitely due to increased costs. In 1977, the City of Miami (City) entered into an agreement with an architectural firm to prepare a master plan of the entire convention center site. Later that year, in an agreement between the City and the University of Miami (University), the City agreed to construct a convention center with a parking garage and further agreed to cause to be constructed a hotel and retail area. The City also agreed to provide the University with adequate parking in the parking garage. The University, in return, agreed to rent a conference center area for a term of thirty years with two thirty-year renewal options. In 1979, the City entered a development agreement in which the City agreed to lease to the developer certain properties for the purpose of constructing and operating a hotel and other facilities at its own expense for a term of forty-five years with a forty-five-year renewal option. The City agreed to construct a water plant to service the needs of the convention center and the hotel and further agreed to give the developer priority to reserve a share of the spaces in the parking garage. The City Commission approved the execution of the development agreement and adopted an ordinance authorizing the issuance of revenue bonds of the City in an amount not exceeding $60,000,000. The bonds were secured by a pledge of the net revenues derived by the City from or in connection with the convention center-garage and other revenues of the City exclusive of ad valorem tax revenues.
The trial court found that under the authority of the Florida Constitution and chapter 166, Florida Statutes (Municipal Home Rule Powers Act), the City was authorized to issue revenue bonds for the construction of the convention center-garage. The court expressly stated that:
The Convention Center-Garage serves a public purpose of the City and its financing and construction as herein authorized are in the public interest by providing exhibit, meeting, conference, parking and other facilities in the City for public, educational, civic, commercial and other organizations.
The trial court found that the City of Miami had properly proceeded under chapter 75, Florida Statutes, complying with each provision thereof, and further found that the bonds did not constitute or create a debt of the City or a pledge of its faith and credit.
The state contends that the bond validation should be denied on two grounds. First, the bond issuance does not comply with article VII, section 10, of the Florida Constitution[2] in that the convention center-garage does not serve a public purpose. *653 Second, the state argues that section 74 of the city charter requires an election which was not held; and, further, the partial lease of the premises for forty-five years is in violation of a thirty-year lease limitation in said section 74 which may void the lease and result in the city being forced to use a substantial additional portion of its general revenue to make bond payments.
Article VII, section 10, of the Florida Constitution prohibits a municipality from lending or using its credit to any private enterprise. When public revenue bonds are used to finance a project other than those described in section 10(c), the particular circumstances must be considered in determining whether the lending or use of public credit for the project is contemplated. The validity of the proposed public revenue bond financing project depends on whether the bond issuance serves a paramount public purpose. See Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). If the bond issuance serves a public purpose, then even an incidental benefit to a private entity will not negate the public character of the project. See Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953). In addition, this Court has previously held that it is "impossible to conceive of a public improvement which will not incidentally benefit some private individual ... engaged in private enterprise for private gain." See State v. Board of Control, 66 So.2d 209, 210 (Fla. 1953).
In the instant case, it is our view that the convention center-garage does serve a valid public purpose. As noted by the trial court, this facility will provide a forum for educational, civic, and commercial activities and organizations. Further testimony at the bond validation proceeding indicated that this facility will also increase tourism and international trade. We have previously held that these interests serve a public purpose. See State v. Inter-American Center Authority, 84 So.2d 9 (Fla. 1955). This Court has also recognized that the redevelopment of downtown areas with the aid of improved parking facilities serves a valid public purpose. See City of Naples v. Moon, 269 So.2d 355 (Fla. 1972).
The incidental benefits accruing to the developer and the University are not so substantial as to tarnish the public character of this convention center-garage. The instant case is unlike the situation in State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967), where the project served mostly private interests and the public had no control of the facilities for possibly seventy-five years.
The state alleges that our decision in Baycol, Inc. v. Downtown Development Authority, 315 So.2d 451 (Fla. 1975), supports the view that the bond issuance in question does not serve a public purpose. We disagree. In Baycol, revenue bonds were sought to be issued to finance a public parking facility. The air rights above the facility were to be leased to a private developer for the construction of a shopping center. Finding that the need for the parking facility would only arise after completion of the shopping center, this Court refused to validate the bonds. In the instant case, however, there was an existing need and justification for the convention center-garage long before the contemplation of a hotel and retail area. The voters had approved this facility in 1964, and the City at that time did not contemplate the involvement of either the University or the developer. It is clear that the City's dominant interest has continually been the construction of the convention center-garage, and the lease of property by the City is only incidental to the paramount public purpose.
The state asserts that section 74 of the city charter requires an election which has not been held and prohibits the lease of a portion of the facility for forty-five years. We reject these contentions and find these provisions constitute limitations on the borrowing and leasing powers of the City of *654 Miami which have been nullified by section 166.021(4), Florida Statutes (1977).
The Municipal Home Rule Powers Act [Act] set forth in chapter 166, Florida Statutes, was intended to secure the grant of the broad home rule powers to municipalities as provided by article VIII, section 2 of the Florida Constitution. Municipalities are granted the authority to conduct municipal government, perform municipal functions, and render municipal services so long as the powers are exercised for municipal purposes. The Act not only fails to incorporate restrictions set forth in municipal charters, but also specifically provides that "[a]ny other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed." § 166.021(4), Fla. Stat. Our decision is in accordance with an opinion rendered by the attorney general. See 1973 Op.Atty.Gen. Fla. 073-446 (November 29, 1973).
Neither the Municipal Home Rule Powers Act nor the Florida Constitution requires an election to approve the issuance of revenue bonds which do not pledge ad valorem taxes. Therefore, an election is not necessary to approve the financing of this convention center-garage, but rather the City Commission may approve it.
The function of this Court in a bond validation proceeding is to determine whether the authorizing body has the power to act and whether it exercises that power in accordance with the purpose and intent of the law. See State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978); State v. Sarasota County, 372 So.2d 1115 (Fla. 1979).
We find that the trial judge was correct in holding that the proposed issuance of bonds was authorized by law, and his final judgment validating the bonds is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Art. V, § 3(b)(2), Fla. Const.
[2] This section provides, in relevant part:

Neither the state nor any ... municipality ... shall become a joint owner with, ... or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person....