417 So.2d 959 (1982)
STATE of Florida, Appellant,
v.
ORANGE COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, Appellee.
No. 61371.
Supreme Court of Florida.
June 3, 1982.
*960 Robert Eagan, State Atty., and James S. Lewis, Jr., Asst. State Atty., Ninth Judicial Circuit, Orlando, for appellant.
Leighton D. Yates, Jr. of Maguire, Voorhis & Wells, Orlando; Talbot D'Alemberte and G. Keith Quinney, Jr. of Steel, Hector & Davis, Miami, Special Litigation Counsel; and R. William Ide, III and Frank A. Lightmas, Jr. of Kutak, Rock & Huie, Atlanta, Ga., Bond Counsel, for appellee.
ADKINS, Justice.
This is an appeal from a final judgment entered in proceedings for the validation of bonds to be issued by an Industrial Development Authority. We have jurisdiction. Art. V § 3(b)(2), Fla. Const.
The Orange County Industrial Development Authority (hereinafter called the "authority"), adopted a resolution providing for the issuance of tax-exempt industrial development revenue bonds in the approximate amount of eight million dollars to finance the construction of a public lodging and restaurant facility (hereinafter called the "convention hotel"), by C.B. Day Realty of Florida, Inc. (hereinafter called "Day Realty"), in connection with the Orange County Convention/Civic Center (hereinafter called the "convention/civic center").
The trial court entered a final judgment of validation finding (1) that chapter 80-287, Laws of Florida, amending Chapter 159, part II, was a constitutional and valid exercise of legislative power; (2) that the project, as defined in the bond resolution, was in an industrial or manufacturing plan within the meaning of Article VII § 10(c) of the Florida Constitution; (3) that the project serves a paramount public purpose and could, therefore, be financed through revenue bonds since the credit of neither the authority nor the state was at risk; and (4) that the primary purpose of the project was to provide service in connection with the convention/civic center, another facility qualifying under the act and authorized by the Florida Constitution.
The 1980 annual tourism report prepared by the division of tourism of the Florida Department of Commerce (introduced into evidence) reports that a record 35.9 million visitors traveled to Florida in 1980 and that tourists generated expenditures amounting to over $17 billion, tourism-generated employment for over five hundred eighty thousand Floridians with a payroll of almost four billion dollars and tourist generated state tax revenues exceeding $785 million. This report also reflects that Orange County is the primary destination in Florida for auto visitors and that it is the third most popular destination in Florida for air visitors.
This report also reflects that tourism in the Orange County area has grown primarily as the result of the opening of Walt Disney World in late 1971. This attraction is the number one drawing card in the world and currently has an annual attendance of approximately fifteen million people. The $800 million EPCOT futuristic theme park expansion program is scheduled for completion by Walt Disney World in 1983 and the annual attendance is expected then to increase dramatically. Sea World, located across the Beeline Expressway from the convention hotel, is Florida's second most popular tourist attraction, currently attracting approximately three million persons annually. The 1980 annual tourist report also indicates that of ten leading tourist attractions in Florida, four are located in the Orange County area. Numerous other tourist attractions are being developed in this area, including Walt Disney World's *961 plan of seven hundred acre $100 million Reedy Creek Family Resort, the $170 million Little England Theme Park and a planned $170 million movie studio attraction to be built by MCA/Universal Studios.
The Orange County tourist development plan for the convention/civic center was approved by the voters and tourist development tax revenue bonds were issued by Orange County to finance construction of the convention/civic center. The specific site of the convention/civic center consists of seventy acres adjacent to the intersection of Interstate 4 and Beeline Expressway located within the Plaza International, a totally planned tourist/commercial development area. Plaza International will include various lodging and entertainment facilities, restaurants and retail/commercial centers all designed to complement and serve the convention/civic center. The convention hotel is part of the convention/civic center plan.
The proposed convention hotel is located on a 3.83 acre site within Plaza International, and less than a nine minute walk from the convention/civic center itself. It is expected to employ approximately sixty-five people. The convention/civic center development plan is based on the construction of larger facilities that are to provide accommodations for people attending the convention/civic center. Records show that the availability of lodging facilities within a short distance of the convention/civic center is vital to the success of the convention/civic center yet at this time, there are no such facilities located within the development area.
In this appeal the state concedes that the proceedings taken authorizing the issuance of the bonds were proper and raises no procedural argument regarding those proceedings. The state argues that the 1980 amendment to Chapter 159 part II, Chapter 80-287, Laws of Florida, is unconstitutional in that it provides that lodging facilities in connection with a convention center may be financed with industrial development revenue bonds.
Chapter 159 part II, Florida Statutes is known as the Florida Industrial Development Financing Act. In section 159.26 the legislature made a finding that "agriculture, tourism, urban development, and health care industries, among others, are vital to the economy of the state and the welfare of the people and need to be enhanced and expanded to improve the competitive position of the state." The legislature also found that the purposes to be achieved by such projects and financing of them are public purposes and that such purposes implement the purposes of government under the state constitution of providing for the health, safety and welfare of the people, including "implementing the purpose of Section 10(c) of Article VII of the State Constitution." Section 159.27(5) specifically states that a "`[p]roject' means any capital project comprising ... a convention or trade show facility ... and all appurtenances and facilities incidental thereto, such as ... public lodging and restaurant facilities... ."
The state argues that the above projects added by the amendment, chapter 80-287, are not enumerated in Article VII, Section 10(c) of the Florida Constitution and the issuance of bonds for a convention hotel has not yet been found by this Court to be constitutionally permissible. The state concedes that the credit of the state, Orange County, the authority or any political subdivision thereof is not pledged to the repayment of these bonds. Nonetheless, the state questions whether the authority's position can be sustained.
Under the provisions of Florida Constitution Article VII, Section 10 an agency of the state is prohibited from using its taxing power or credit to aid any corporation, association, partnership or person. However, the legislature may enact laws authorizing the issuance of "revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing law of the United States... ." Art. VII, § 10(c), Fla. Const.
*962 In State v. City of Miami, 379 So.2d 651, 653 (Fla. 1980), we said:
Article VII, section 10, of the Florida Constitution prohibits a municipality from lending or using its credit to any private enterprise. When public revenue bonds are used to finance a project other than those described in section 10(c), the particular circumstances must be considered in determining whether the lending or use of public credit for the project is contemplated. The validity of the proposed public revenue bond financing project depends on whether the bond issuance serves a paramount public purpose. See Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). If the bond issuance serves a public purpose, then even an incidental benefit to a private entity will not negate the public character of the project. See Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953). In addition, this Court has previously held that it is "impossible to conceive of a public improvement which will not incidentally benefit some private individual ... engaged in private enterprise for private gain." See State v. Board of Control, 66 So.2d 209, 210 (Fla. 1953).
In State v. City of Miami, the Court approved revenue bonds to finance a convention center and garage. We held that the "convention center-garage does serve a valid public purpose." In the City of Miami, the city had entered into various agreements to construct a convention center and parking garage and part of the project was an arrangement with a private developer to lease to the developer certain properties for the purpose of constructing and operating a hotel and other facilities. We upheld the authority of the city to issue the revenue bonds to finance the entire development. Although the bonds in the City of Miami case were issued under the municipal home rule powers act, Chapter 166, Florida Statutes, we specifically focused on whether the proposed projects served a paramount public purpose. We noted that incidental benefits accruing to the developer of the convention hotel were not so substantial as to tarnish the public character of the convention center.
The legislature in essence codified the City of Miami decision by the 1980 amendment to the Florida Industrial Development Financing Act. The amendment, which is now under attack, provides that a hotel in connection with a convention center is an eligible project.
When the legislature makes a determination of public purpose, a party challenging such a legislative determination must show that such determination "was so clearly wrong as to be beyond the power of the Legislature." Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 309 (Fla. 1971); see also State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980); State v. Housing Finance Authority of Polk County, 376 So.2d 1158 (Fla. 1979).
The record reflects that the convention hotel will play a significant role in the development and success of the convention/civic center by providing accommodations for people attending the convention/civic center. The convention hotel is located within a short walking distance, thus making it easily accessible to people attending the convention/civic center.
The record reflects that Days Inn is a nationally recognized leader in the industry, and the convention/civic center will not succeed unless and until companies like Days Inn are encouraged to build hotels or motels near the convention/civic center. Moreover, Days Inn provides moderately priced facilities to provide the necessary mix of room prices.
The trial court in its findings included in the final judgment of validation said:
The Project as defined in the Inducement Resolution is a capital project for an industrial or manufacturing plant, consisting of a motel facility, within the meaning of Article VII, Section 10(c) of the Florida Constitution, and a "project" within the meaning of the Act, as amended.
The Project serves a paramount public purpose and there is no direct or indirect *963 undertaking by Plaintiff or any other public body to pay the Bonds from public funds. Therefore, even if the Project is not an industrial or manufacturing plant within the meaning of Article VII, Section 10(c) of the Florida Constitution, the Legislature was authorized by the Florida Constitution to amend the Act with the 1980 Amendment and to provide for the financing of the Project by the issuance of industrial development revenue bonds.
Further, the Project consists of a public lodging facility as defined in s. 509.242 and a restaurant facility as defined in s. 509.013(5) whose primary purpose is to provide service in connection with a convention center, another qualifying facility as set forth in Section 159.27(12) of the Act. The Project's connection with the Orange County Convention Center is so integral that it may be deemed to be a part of a convention center and therefore authorized by the Florida Constitution.
The primary purpose of the project is to provide services to a convention center which is a facility that qualifies under the Florida Industrial Development Financing Act and the Florida Constitution. The final judgment of the trial court validating the proceedings taken in connection with the issuance of the bonds and the authority's power to issue the bonds is affirmed.
It is so ordered.
OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
BOYD, J., dissents with an opinion.
SUNDBERG, C.J., dissents.
BOYD, Justice, dissenting.
I dissent from the decision of the Court approving the proposed bond issue. For the reasons stated in State v. Osceola County Industrial Development Authority, No. 61,205 (Fla. June 3, 1982), I find that the project to be financed is not an authorized project under the Florida Industrial Development Financing Act.
The majority finds statutory authority for the proposed project because an authorized "project" is defined in the act to include "a convention or trade show facility ... and all appurtenances and facilities incidental thereto, such as ... public lodging and restaurant facilities." § 159.27(5), Fla. Stat. (1981). The instant project, however, is only a motel. The statute contemplates that a motel may be financed as part of a larger project financed pursuant to the statute. But a "public lodging and restaurant," standing alone, is not authorized as a project under the statute.
The majority opinion seeks to justify its decision on the ground that the motel is being constructed in connection with a convention facility or civic center. But this convention facility or civic center is a separate project. Its financing is not before the Court in this proceeding. The act contemplates bonded financing of "public lodging and restaurant" facilities only as a part of a "project" involving the development of a separate facility such as the one the majority refers to. The motel is not a facility or appurtenance incidental to a convention or trade show facility in the sense required by the statute. Viewed separately and standing alone, the motel is not an authorized project and may not be financed under the act. State v. Osceola County v. Industrial Development Authority, No. 61,205 (Fla. June 3, 1982).
For these reasons I dissent and would reverse the order of validation.