424 So.2d 739 (1982)
STATE of Florida, Appellant,
v.
OSCEOLA COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, Appellee.
No. 61205.
Supreme Court of Florida.
December 16, 1982.
Robert Eagan, State Atty., and Jeffords B. Miller, Asst. State Atty., Ninth Judicial Circuit, Orlando, for appellant.
Talbot D'Alemberte, G. Keith Quinney, Jr. and Thomas R. Julin of Steel, Hector & Davis, Miami, Special Litigation Counsel, Murray W. Overstreet of Overstreet and Ritch, Kissimmee, and R. William Ide, III and Frank A. Lightmas, Jr. of Kutak, Rock & Huie, Bond Counsel, Atlanta, Ga., for appellee.
Griffith F. Pitcher, James J. Cooney, Roy S. Goldfinger and J. Michael Nifong of Squire, Sanders & Dempsey, Miami, for Florida Chamber of Commerce, Inc., amicus curiae.
ALDERMAN, Chief Justice.
We review the final judgment of the Circuit Court for Osceola County validating industrial development revenue bonds for the construction of a public lodging facility by C.B. Day Realty of Florida, Inc., in Osceola County in connection with a "tourism facility." The trial court, in validating the bonds, held that chapter 159, parts II and III, as amended by chapter 80-287, Laws of Florida (1980), is a valid and constitutional statute and constitutes sufficient and valid authority for the issuance of these bonds and held that the project serves a paramount public purpose. We agree and affirm the judgment of the trial court validating these bonds.
Pursuant to chapter 159, part II, Florida Statutes (1981), entitled Florida Industrial Development Financing Act, the Osceola County Industrial Development Authority adopted a resolution providing for the issuance of tax exempt industrial development revenue bonds not to exceed $10 million to finance the construction of a public lodging facility on U.S. Highway 192 to provide service in connection with the planned Walt Disney World Reedy Creek Resort and Little England Theme Park. The authority then filed its complaint seeking validation of these bonds.
The trial court found that, in accordance with the provisions of the Florida Industrial *740 Development Financing Act, Osceola County Industrial Development Authority had determined:
A. The Project is appropriate to the needs and circumstances of, and shall make a significant contribution to the growth of Osceola County, shall provide or preserve gainful employment, and shall serve a public purpose by advancing the economic prosperity, the public health and the general welfare of the State of Florida and its people.
B.C.B. Day Realty of Florida, Inc. (the "Company") is financially responsible and the Company, together with Cecil B. Day Companies, Inc. (the "Guarantors"), are fully capable and willing to fulfill their obligations, including the obligation to make installment purchase payments in the amounts and at the times required, to operate, maintain and repair the Project at their own expense and to serve the purpose of the Act and the other responsibilities to be imposed, due consideration having been given to the net worth of the Company and the Guarantors, earning trends, coverage of all fixed charges, the nature of the motel industry, its inherent stability, and other factors determinative of the capability of the Company, financially and otherwise, to fulfill its obligations consistently with the purposes of the Act.
C. Osceola County is able to cope satisfactorily with the impact of the Project and will be able to provide, or cause to be provided when needed, the public facilities, including utilities and services, that will be necessary for the construction, operation, repair and maintenance of the Project and on account of any increases in population or other circumstances resulting therefrom.
D. Adequate provision is made for the operation, repair and maintenance of the Project at the expense of the Company and for the payment of the principal of, premium, if any, and interest on the Bonds when and as the same become due and payable, and for the payment by the Company of all other costs incurred in connection with the financing, construction and administration of the Project which are not paid out of the proceeds from the sale of the Bonds or otherwise.
E. The costs to be paid from the proceeds of the Bonds shall be costs of a project within the meaning of the Act.
The trial court concluded that the project, the primary purpose of which is to provide service in connection with tourism facilities, serves a paramount public purpose.
The State concedes that neither the credit of the State nor any political subdivision thereof was pledged for the repayment of the bonds. It does not dispute the statutory authorization for these industrial development bonds, nor does it make any procedural challenge to the proceedings below. Rather, it contends that the statutory provisions authorizing this bond issuance are unconstitutional as applied in the present case because the Days Inn facility operated by a private entity does not serve a paramount public purpose. The State, however, expressly acknowledges the substantial impact of tourism on Florida's economy. It refers to the 1980 Florida Visitor Study: An Executive Summary to show that tourism generated expenditures of over $17 billion, employment for 580,000 Floridians with a $4 billion payroll, and state tax revenues of over $785 million. It also accepts the conclusions of this report that the Osceola County area is the primary destination in Florida for auto visitors and is the third most popular destination in Florida for air visitors. It recognizes that tourism in the Osceola County area has grown as a result of Walt Disney World, which is the number one tourist attraction in the world; that Walt Disney World's expansion of its futuristic theme park is scheduled for completion in 1983; that this expansion is expected to increase annual attendance dramatically; and that also included among tourist attractions being developed in the specific area surrounding the proposed Days Inn facility are Walt Disney World's Reedy Creek Resort, the Little England Theme Park, and a planned movie studio attraction to be built by MCA/Universal Studios.
*741 The proposed public lodging facility is to be built in connection with and directly adjacent to Reedy Creek and Little England. Its location also will be only minutes away from Walt Disney World's main gate. It is anticipated that as a result of these new attractions, 20,000 additional hotel/motel rooms will be needed to accommodate the increase in the number of visitors, and it is expected that the proposed Days Inn facility will get the majority, if not all, of its business from these existing and planned attractions.
In 1980, the legislature substantially amended the Florida Industrial Financing Act to encompass the project contemplated in the present bond proceeding. Ch. 80-287, Laws of Fla. (1980). Section 159.26 now provides:

The Legislature finds and declares that the agriculture, tourism, urban development, and health care industries, among others, are vital to the economy of the state and the welfare of the people and need to be enhanced and expanded to improve the competitive position of the state; that there is a need to enhance other economic activity in the state by attracting manufacturing development, business enterprise management, and other activities conducive to economic promotion in order to provide a stronger, more balanced, and stable economy in the state, while providing through pollution control and otherwise for the health and safety of the people; that in order to improve the prosperity and welfare of the state and its inhabitants, to improve living conditions and health care, to promote the rehabilitation of slum areas or blighted areas, to promote effective and efficient pollution control throughout the state, to promote the advancement of education and science, research in and the economic development of the state, and to increase purchasing power and opportunities for gainful employment, it is necessary and in the public interest to facilitate the financing of projects provided for in this part and to facilitate and encourage the planning and development of these projects without regard to the boundaries between counties, municipalities, special districts, and other local governmental bodies or agencies in order to more effectively and efficiently serve the interests of the greatest number of people in the widest area practicable; and that the purposes to be achieved by such projects and the financing of them in compliance with the criteria and requirements of this part are predominantly the public purposes stated in this section and that such purposes implement the governmental purposes under the State Constitution of providing for the health, safety, and welfare of the people, including implementing the purpose of s. 10(c) of Art. VII of the State Constitution. (Emphasis supplied.)
Section 159.27(5) defines project to include a tourism facility and to include certain public lodging and restaurant facilities. Section 159.27(11) defines tourism facility within the contemplation of section 159.27(5) as "property used for or useful in connection with theme parks; zoological gardens; amusement parks; major historical, educational, or trade museums; cultural centers; or spectator or participatory sports facilities generally available to the public, including, without limitation thereto, marinas, arenas, beaches, bathing facilities, golf courses, theaters, auditoriums, racetracks, and frontons." Section 159.27(12) defines public lodging or restaurant facility within the contemplation of section 159.27(5) as "property used for any public lodging establishment as defined in s. 509.242 or public food service establishment as defined in s. 509.013(5) if the primary purpose is to provide service in connection with another facility qualifying under this part." The primary purpose of the proposed Days Inn facility is indisputably to provide services to a qualifying project, a tourism facility as defined by section 159.27(5).
The proposed project is clearly authorized by the statute. To qualify as a project under chapter 159, part II, the public lodging or restaurant facility does not have to be an integral part of a larger project encompassing the tourism facility. In other *742 words, it does not have to be a part of the same project as the qualifying facility. It alone may constitute a "project" so long as its primary purpose is to provide service in connection with a qualifying facility.
The legislature has expressly determined that a project consisting of a public or lodging facility, such as the present Days Inn project, the primary purpose of which is to provide service in connection with another facility qualifying under the act, here a tourism facility, serves a predominantly public purpose. We have recently rejected the same argument now being made by the State that because the hotel is operated by a private, investor-owned entity, it does not serve a public purpose, and the legislature may not constitutionally say it does. In State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982), we affirmed the trial court's judgment validating tax exempt industrial development revenue bonds to finance the construction of a public lodging and restaurant facility by C.B. Day Realty of Florida, Inc., in connection with the Orange County Civic Center. The trial court, in State v. Orange County, determined and we agreed that the proposed Days Inn facility in that case would serve a paramount public purpose and that the primary purpose of the project would be to provide service in connection with a convention/civic center, a facility qualifying under the act and authorized by the Florida Constitution. The arguments for and against the validation of those bonds are almost identical to the arguments made in the present case. Upholding the validation of the bonds in State v. Orange County, we said:
When the legislature makes a determination of public purpose, a party challenging such a legislative determination must show that such determination "was so clearly wrong as to be beyond the power of the legislature." Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 309 (Fla. 1971); see also State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980); State v. Housing Finance Authority of Polk County, 376 So.2d 1158 (Fla. 1979).
....
The record reflects that Days Inn is a nationally recognized leader in the industry, and the convention/civic center will not succeed unless and until companies like Days Inn are encouraged to build hotels or motels near the convention/civic center. Moreover, Days Inn provides moderately priced facilities to provide the necessary mix of room prices.
417 So.2d at 962.
We must give great weight to the legislative determination that a "public lodging or restaurant facility" having the primary purpose of providing services in connection with a "tourism facility" is a project which serves the predominately public purposes of promoting the economy and welfare of the people of this state. §§ 159.26 and 159.27, Fla. Stat. We should not substitute our judgment for that of the legislature on the general question of whether tourism is vital to the economy of the state and the welfare of the people, nor should we substitute our judgment for that of the trial judge on the specific question of whether, based on the record in this case, the Days Inn facility serves that paramount public purpose. We must also give great weight to the finding by the Osceola County Industrial Development Authority that the Days Inn facility proposed in this case qualifies as a public lodging or restaurant facility under section 159.27(12).
The State has failed to demonstrate that the legislature's determination of public purpose was so clearly wrong as to be beyond the power of the legislature. The trial court properly determined that the Days Inn facility would serve a paramount public purpose and that there is no direct or indirect undertaking by any public body to pay the bonds from public funds. The court further correctly found that the project consists of a qualifying public lodging facility as defined in section 159.27(12).
Accordingly, we affirm the trial court's judgment validating the bonds and the power of the Osceola County Development Authority to issue the bonds.
It is so ordered.
*743 ADKINS, McDONALD and EHRLICH, JJ., concur.
BOYD, J., dissents with an opinion, with which OVERTON, J., concurs.
OVERTON, J., dissents with an opinion.
BOYD, Justice, dissenting.
I dissent from the judgment of the Court. I would deny rehearing and adhere to our original disposition of this case, reversing the judgment of validation.
I believe that the Florida Industrial Development Financing Act is in need of judicial construction and that a narrow construction is necessary to save the statute from unconstitutionality. As construed in this necessarily narrow fashion, the statute does not authorize the issuance of industrial development bonds to finance the project involved in this case. If, under the proper construction of the statute and a proper understanding of the legislative intent, projects such as the one involved in this case are authorized, then the statute violates article VII, section 10, Florida Constitution.
The essence of the authority conferred by the statute is found in the definition of "project" in section 159.27(5), Florida Statutes (1981). That subsection shows that a "public lodging or restaurant facility" can be a part of a "project" only as an appurtenance and cannot be one by itself. The majority sees the definition of "public lodging or restaurant facility" in section 159.27(12) as authorizing a motel as a project if it is intended to be used in connection with a qualifying facility. As I said in dissent in State v. Orange County Industrial Development Authority, 417 So.2d 959, 963 (Fla. 1982), however, I do not construe the statute that way. The definition is limited by the specific enumeration of authorized projects in the definition of the term "project." See Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968). The lodging or restaurant facility must be a part of the same project as the qualifying facility. This analysis compels the conclusion that a motel may not constitute a project on its own but may be an appurtenance of a qualifying facility and thus a part of a project to be financed with public bonds. I find further support for this construction in the principle that statutes should if possible be construed so as to preserve their constitutionality. Leeman v. State, 357 So.2d 703 (Fla. 1978); Tyson v. Lanier, 156 So.2d 833 (Fla. 1963).
Article VII, section 10, Florida Constitution, prohibits the state and its subdivisions from giving, lending, or using their "taxing power" or their "credit" to aid any corporation, association, partnership, or person, except as authorized by one of the exceptions listed in article VII, section 10. As construed by this Court over a period of many years, article VII, section 10 requires that capital projects to be financed with bonds issued by public agencies must meet two essential requirements: (1) the bonds must be payable only from project revenues and not from taxation and (2) the project must serve a paramount public purpose. Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1976).
Numerous decisions of this Court have provided interpretation of the requirement of a paramount public purpose. Decisions construing the predecessor provision of article VII, section 10  article IX, section 10 of the Florida Constitution of 1885  are sources of authority for the construction of the current provision since it is of the same import. See State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980); In re Advisory Opinion to the Governor, 112 So.2d 843 (Fla. 1959); cf. Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 309 (Fla. 1971) (projects not falling within one of the exceptions in article VII, section 10 must "run the gauntlet" of decisions rendered prior to the 1968 adoption of the exceptions).
Under article VII, section 10, where a project proposed for public bond financing has elements of private economic benefit, the public purpose must predominate; the private use and benefit from the project must be incidental to the public purpose. This principle has been applied in cases involving airports, civic auditoriums, marinas, *744 stadiums, public parking garages and other public facilities to which were connected elements of private use and benefit. E.g., State v. Okaloosa County Airport & Industrial Authority, 168 So.2d 745 (Fla. 1964); City of West Palm Beach v. State, 113 So.2d 374 (Fla. 1959); Panama City v. State, 93 So.2d 608 (Fla. 1957); State v. Daytona Beach Racing & Recreational Facilities District, 89 So.2d 34 (Fla. 1956); Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953). Until the recent enactment of chapter 80-287, Laws of Florida, and the decisions in cases such as State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982), the Court never had occasion to weigh the public purpose against the private benefit in the construction of a motel, because no one ever had the imagination to suggest that a motel is a public facility. Where private use and benefit predominates and the connection with the public realm becomes tenuous, the "paramount public purpose" requirement is not met.
A broad, general public purpose, such as economic stimulation of a region, which is extraneous to the actual use of the physical facilities themselves, will not sustain the constitutionality of a project which, in terms of its direct, actual use, is purely a private enterprise. E.g., State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967); State v. Manatee County Port Authority, 193 So.2d 162 (Fla. 1966); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952). If the project sought to be financed is purely a private enterprise, a public purpose sufficient to sustain its constitutionality will not be found based on its loose connection with some broader plan having public significance if the entire public project is not before the court for scrutiny. State v. Suwannee County Development Authority, 122 So.2d 190 (Fla. 1960).
Since the general promotion of the economy is not, for purposes of the constitutional requirement, a public purpose, when a private business facility is sought to be financed with public bonds, the gravamen of the public purpose requirement is the public necessity for the project. When a privately operated business facility is needed as an amenity at a certain place or in connection with a certain public facility, and the private enterprise market cannot be expected to adequately respond to the need, then the necessity for public inducement or public-assisted financing is shown.
The Court majority and the proponents of the bond issue recognize that necessity is an important element of the public purpose requirement. They emphasize the fact that central Florida is a rapidly developing area in the field of tourism with a variety of large-scale tourist attractions being developed there. From this evidence, however, I draw conclusions that are vastly different from those drawn by the proponents and by the majority opinion. If the tourist attractions are successful, they will create an increased demand for lodging in the area. Rather than concluding that this increased demand establishes a need for publicly assisted bond financing of a motel to be privately owned and operated for profit, I would conclude instead that various investors and groups of investors in the hotel and motel field will literally be vying with one another for the opportunity to finance the construction of hotels and motels in the central Florida area. Thus there is little or no need for public bond financing.
In a free market economy, private investment capital responds to opportunities for profit and growth and thereby gets invested in operations to meet economic demands such as the growing demand for lodging in central Florida. Where a political agency such as a local industrial development authority has the power to bestow upon an entrepreneur or developer the opportunity to finance construction of a business facility with tax-exempt industrial development bonds, a new and disruptive element is introduced into the competitive arena of the marketplace. In such a case, the political authority has the power to confer a decisive financing advantage upon a selected developer which other competitors do not enjoy.
This unnecessary entanglement of political authority with the private economic arena *745 interferes with the process of competition and has far-reaching consequences with regard to the outcomes of competition. We normally expect that, in the operation of motels and all other kinds of businesses, the developers and managers who construct and operate their facilities economically and efficiently will have greater chances for success than those who do not. Those who produce a better product and render better service for value received will tend to draw larger shares of the market than those who perform less well. We generally expect that success  profits and growth  will go to those who provide better products and services while controlling their costs. But in the motel business in central Florida, as well as in many other phases of economic activity all across the nation, a different set of rules is now applicable. Publicly assisted financing can place one competitor at an advantage over another without regard to the quality of the facility constructed, the product delivered, or the service rendered. Thus, political influence comes to mean more to a company's chances for success than efficiency and performance. This trend will work to the extreme detriment, and not to the benefit, of consumers and workers in the tourist industry alike.
OVERTON, J., concurs.
OVERTON, Justice, dissenting.
I dissent, and concur in the dissent of Justice Boyd. I find that the circumstances of this case are clearly distinguishable from the circumstances in which this Court validated the bonds in State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982). I concurred in the validation of those revenue bonds because the hotel in that case was found to be part of "a totally planned tourist/commercial development area... . The convention hotel is part of the convention/civic center plan." Id. at 951.
The evidence in this cause does not establish that this motel was built as part of an overall tourist attraction or civic center development plan. Its only connection with a tourist attraction is its geographic proximity to Walt Disney World and other attractions. The majority's approval of this bond issue means that every new motel development in Osceola or Orange County is entitled to revenue bond financing under chapter 159 if they are able to politically convince the Industrial Development Authority to approve this low cost financing. In my view, this was not the intent of the legislature and is not a proper interpretation of chapter 159.