Mr. John W. Burton City Attorney City of Wauchula Post Office Drawer 1729 Wauchula, Florida 33873
Dear Mr. Burton:
This is in response to your request for an opinion on substantially the following question:
 CAN A MUNICIPALITY REPEAL OR AMEND WITHOUT REFERENDUM A CHARTER PROVISION ESTABLISHING THE PROCEDURE FOR AND PLACING LIMITATIONS OR RESTRICTIONS ON THE SALE OF CERTAIN MUNICIPAL PROPERTY?
Your letter and other materials you have provided to this office state that the City of Wauchula owns one hundred twenty acres of land which is located outside the city limits. Some consideration is now being given to a proposal to sell this land to the state for construction of a prison. The city council is uncertain of the appropriate procedure to follow in view of certain charter provisions which regulate and place restrictions on the sale and disposal of the city's real and personal property when the value of such property exceeds $50,000.
Section 11, Ch. 9940, 1923, Laws of Florida, an Act to abolish what was then the municipal government of the City of Wauchula and to amend Ch. 5864, 1907, Laws of Florida, authorizes the city to acquire and hold real and personal property within and without its territorial boundaries for public purposes, to sell, convey and dispose of such property and authorizes but does not require the city council to prescribe by ordinance the manner of making any such conveyance. Section 90 of Ch. 9940, supra, conditioned the effectiveness of the Act upon ratification by the qualified electors of the city. If that Act was not in fact ratified by the electors of the city, then Ch. 5864, 1907, Laws of Florida, remained in force and effect. Section 2, Art. II, Ch. 5864, inter alia, empowered the city to "purchase, lease, receive and hold property, real and personal, beyond the limits of the city, to be used for . . . houses of correction and detention . . . and for other public purposes . . .; and [to] sell, lease or otherwise dispose of said property for the benefit of the city to the same extent that natural persons may do so." Pursuant to s 2(c), Art. VIII, State Const., the exercise of extra-territorial powers by a municipality must be provided for by general or special law. See also, s166.021(3)(a), F.S. Therefore, the grant of extra-territorial powers made by s 11 of Ch. 9940, supra (or by s 2, Art. II of Ch. 5864, supra, if Ch. 9940 was not in fact ratified by the electors of the city), remains in force and effect and is an existing and integral part of the charter of the city which may not be amended or repealed by ordinance. However, Ch. 69-1717, Laws of Florida, which was an Act "regulating sale of real and personal property owned by [the] city," would appear to apply to and regulate the sale of any and all real or personal property belonging to the city, including the 120 acres of land located outside the city limits here in question. Section 1 of Ch. 69-1717, Laws of Florida, gives the mayor and city council the unrestricted power to sell or dispose of real property belonging to the city when the value thereof does not exceed the sum of $50,000. However, if the value of such property does exceed $50,000, the mayor and city council must proceed in the manner provided in s 2 of the Act. Section 2 provides:
 Before the sale of either real or personal property of the City of Wauchula which exceeds in value the sum of fifty thousand dollars ($50,000) shall be made by the city council and the mayor, the city council shall cause to be appointed a board of appraisers consisting of three (3) members, of which the mayor and president of the city council shall be two (2), and the remaining member elected from the body of the city council. The board shall view and appraise the property, either real or personal or both, proposed to be sold, and determine the actual cash value thereof as nearly as possible, and in arriving at the value to be placed upon any such property there shall be no splitting up of the value of properties to reduce the value below fifty thousand dollars ($50,000). It may require the services of a competent engineer, when necessary, who shall be paid by the city. The board of appraisers shall, as soon after appointment as possible, report in writing to the city council the values fixed by it upon the properties proposed to be sold. The city council shall, thereupon, after having given at least two (2) weeks' notice by publication in a newspaper, adopt a resolution proposing a sale of such property. The notice required herein shall state the time and place at which the said city council will consider the passage of the resolution and the purposes of the same. The resolution shall set forth a description of the property proposed to be sold and the value thereof as fixed by the board of appraisers, the purposes for which the proceeds to be derived from a sale thereof will be used, and propose a sale of the said property. The resolution shall provide for the submission of the question whether the same shall be sold or not to a vote of the qualified electors who are freeholders of the city. It shall require a two-thirds (2/3) majority vote of all qualified electors voting at such election to authorize the sale, disposition of, mortgaging, pledging, leasing, encumbering, bartering, or exchanging of any such real or personal property, the value of which exceeds the sum of fifty thousand dollars ($50,000) as provided herein.
Those portions of ss 1 and 2 of Ch. 69-1717, supra, limiting or restricting the power of the mayor and city council to sell and convey the land in question for the benefit of the city would clearly appear to constitute a specific "limitation of power upon [the] municipality" within the scope of the last sentence of s166.021(4), F.S., which states that "[a]ny other limitation of power upon any municipality, contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed." Therefore, there exist no viable charter provisions or provisions of special law which impose any restrictions or limitations upon the power of the governing body of the city to approve the sale or disposal of, or to sell and convey, the lands in question for the benefit of the city. Except for those items or exceptions listed in s 166.021(4), F.S. (none of which concern the sale or disposition of municipally held and owned property or the procedure therefor) all limitations of power upon a municipality contained in a municipal charter enacted or adopted prior to July 1, 1973, were nullified and repeal by Ch. 73-129, Laws of Florida, i.e., the Municipal Home Rule Powers Act (Ch. 166, F.S.).
In State v. City of Miami, 379 So.2d 651 (Fla. 1980), the Supreme Court held that a section of the City of Miami Charter was invalid under s 166.021, F.S., as it constituted an unauthorized restriction on the borrowing and leasing powers of the city (see, Rolle v. City of Miami, 408 So.2d 642, 643 [3 D.C.A.Fla., 1981]. The Supreme Court stated the applicable law as follows:
 The state asserts that section 74 of the city [of Miami] charter requires an election which has not been held and prohibits the lease of a portion of the facility for forty-five years. We reject these contentions and find these provisions constitute limitations on the borrowing and leasing powers of the City of Miami which have been nullified by Section 166.021(4), Florida Statutes (1977). The Municipal Home Rule Powers Act [Act] set forth in chapter 166, Florida Statutes, was intended to secure the grant of the broad home rule powers to municipalities as provided by article VIII, section 2 of the Florida Constitution. Municipalities are granted the authority to conduct municipal government, perform municipal functions, and render municipal services so long as the powers are exercised for municipal purposes. The Act not only fails to incorporate restrictions set forth in municipal charters, but also specifically provides that "[a]ny other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed." s 166.021(4), Fla.Stat. Our decision is in accordance with an opinion rendered by the attorney general. See 1973 Op.Atty.Gen.Fla. 073-446 (November 29, 1973).
379 So.2d 651, 653-654.
Rolle v. City of Miami, supra, holds that another part of the same charter provision which required a referendum on the grant of franchises, also constituted an unauthorized restriction on the power of the City of Miami to grant franchises on its property to private persons under the Municipal Home Rule Powers Act; and that such franchises, like leases of city property or the issuance of revenue bonds, may be approved by the city commission without submission to a referendum. The court stated that "[i]n any event, it is clear beyond dispute that the subject charter provision has been struck down by the Florida Supreme Court as having been nullified by the Municipal Home Rule Powers Act [s 166.021, Fla.Stat. (1979)]." Based on the rationale of State v. City of Miami, supra, and Rolle v. City of Miami, supra, I am of the opinion that the governing body of the city may sell and dispose of municipally owned property for the benefit of the city by any reasonable and practicable procedure it may determine to employ and is not required to comply with the conditions, procedures and requirements for the sale of municipal property prescribed by s 2 of Ch. 69-1717, Laws of Florida, which has been nullified and repealed by Ch. 73-129, Laws of Florida (s 166.021[4], F.S.) as a limitation on the powers of the city.
In summary, then, it is my opinion that the provisions of Ch. 69-1717, Laws of Florida, prescribing procedures for and placing restrictions or limitations on the power of the City of Wauchula to sell and dispose of municipally owned real and personal property for the benefit of the city were nullified and repealed by Ch. 73-129, Laws of Florida (s 166.021[4], F.S.), and are no longer a part of the city charter. Therefore, the governing body of the city may sell and convey municipally owned property located within or without the city limits for the benefit of the city by any reasonable and practicable procedure it may determine to utilize.
Sincerely,
Jim Smith, Attorney General
Prepared by: Gerry Hammond, Assistant Attorney General