443 So.2d 97 (1983)
Jerry R. LINSCOTT, Appellant,
v.
ORANGE COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, a Public Body Corporate and Politic, Appellee.
No. 63308.
Supreme Court of Florida.
December 22, 1983.
*98 Jerry R. Linscott and Rosemary O'Shea of Baker & Hostetler, Orlando, for appellant.
Griffith F. Pitcher, James J. Cooney, J. Michael Nifong and Cristina Novo of Squire, Sanders & Dempsey, Miami, and Leighton D. Yates, Jr. of Maguire, Voorhis & Wells, Orlando, for appellee.
*99 SHAW, Justice.
This is a direct appeal from a judgment of the circuit court validating the issuance of industrial development revenue bonds for the construction of a regional headquarters office of a multi-state insurance company. We have jurisdiction under article V, section 3(b)(2), Florida Constitution. We find that the bonds do not involve a pledge of the public credit and that the project serves a public purpose as determined under chapter 159, part II, Florida Statutes (1981).
The Orange County Industrial Development Authority (Authority) adopted a resolution authorizing the issuance of tax exempt revenue bonds in a principal amount not to exceed $4,500,000 to finance the construction of a regional headquarters facility (project) in Orange County for American States Insurance Company. The resolution specified that the bonds would be payable solely from the revenue and proceeds derived from the sale, operation, or leasing of the project and would not constitute a debt, liability, or obligation of the Authority or the state or any political subdivision thereof; that the Authority would not be obligated to pay either the bonds or service charges thereon except from revenues and proceeds pledged therefor; and that neither the faith and credit nor the taxing power of the Authority or the state or any political subdivision thereof would be pledged to the payment of the bond service charges.
The trial court entered a final judgment finding, inter alia: (1) the Authority was authorized to issue the bonds by the laws of the state, particularly parts II and III of chapter 159, Florida Statutes (1981); (2) the resolution had been duly adopted; (3) the interest on the bonds would be exempt from federal income tax, subject to certain express qualifications; (4) the principal of, premium and interest on, the bonds would be payable solely from the revenues and proceeds of the project pledged thereof; (5) the project would serve the purposes declared by the legislature in section 159.26 of promoting the economic development of Florida by providing economic benefits to Orange County and central Florida; (6) the necessary actions or proceedings had been taken or conducted to provide for the issuance of the bonds; and (7) all requirements of the constitution and other laws of Florida had been strictly followed. Thereafter, appellant, a citizen and taxpayer of Orange County, timely filed a notice of appeal, pursuant to rule 9.110(i), Florida Rules of Appellate Procedure.
Appellant urges that the trial court erred in validating the bonds because the project neither constitutes an "industrial plant" within the meaning of article VII, section 10(c) of the Florida Constitution nor serves a paramount public purpose. For the reasons set forth below, we find that appellant's arguments are unpersuasive.
The Constitution of 1885, article IX, section 10, prohibited government bodies from obtaining money for, or pledging the public credit to, any private entity. Under case law, revenue bonds payable solely from capital project revenues (non-recourse bonds) were held to be pledges of the public credit and were prohibited unless it could be shown that the capital project served a predominantly or paramount public purpose. Contrast State v. Town of North Miami, 59 So.2d 779 (Fla. 1952), where non-recourse revenue bonds were held to be invalid because they served a predominantly private purpose with only incidental public benefit and State v. Board of Control, 66 So.2d 209 (Fla. 1953), where the bonds were validated because they served a predominantly public purpose with only incidental private benefit. In Town of North Miami, the trial court ruled that the non-recourse bonds for the construction of a private plant were valid because they did not involve a pledge of the public credit. Implicit in our decision overruling the circuit court was a determination that the bonds involved either obtaining money for, or pledging the public credit to, a private entity.
Town of North Miami, and its progeny, began to have a significant effect on Florida's economic development in the 1960s *100 because of a ruling by the Internal Revenue Service, later codified, which made the interest on industrial revenue bonds exempt from federal income tax. As a result of this ruling, Florida was placed at a competitive disadvantage with other states which could offer tax exempt, non-recourse revenue bonds to private entities for capital projects.[1] See, for example, State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967), where non-recourse bonds for a major port expansion were held to be invalid. Significantly, Jacksonville Port Authority was decided in July, 1967, when the Florida Legislature was considering revisions to the Constitution of 1885. The legislative interest in the economic impact of Jacksonville Port Authority was evidenced by the immediate passage of legislation attempting to nullify the court ruling. See 204 So.2d at 892. Concurrently, in August, 1967, each house adopted joint resolutions proposing revisions to the constitutional provisions prohibiting the pledge of public credit to private entities. In pertinent part, the thrust of the Senate version was to overturn Jacksonville Port Authority; that of the House version to overturn Town of North Miami.[2] These differing versions, subsections 10(c)(1) and (2) respectively, became House Joint Resolution No. 1-2X 559-60, Laws of Florida (1968), which was submitted to, and approved by, the voters of Florida in November, 1968.[3]
The impact of the adoption of article VII, section 10(c) of the Florida Constitution (1968) was to recognize constitutionally that the public interest was served by facilitating private economic development and to overturn Town of North Miami and Jacksonville Port Authority holdings that non-recourse revenue bonds were pledges of the public credit. We recognized this impact in Nohrr v. Brevard County Educational Facility Authority, 247 So.2d 304, 309 (Fla. 1971), where we stated:
In order to have a gift, loan or use of public credit, the public must be either directly or contingently liable to pay something to somebody. Neither the full faith and credit nor the taxing power of the State of Florida or of any political subdivision thereof is pledged to the payment of the principal of, or the interest on, these revenue bonds. The purchaser of the revenue bonds may not look to any legal or moral obligation on the part of the state, county, or authority to pay any portion of the bonds.
See also State v. Housing Finance Authority of Polk County, 376 So.2d 1158, 1160 (Fla. 1979); Wald v. Sarasota County Health Facilities, 360 So.2d 763, 768-69 (Fla. 1978).
Appellant characterizes subsection (c) as an exception to the prohibition against the pledging of public credit contained in the first paragraph of section 10. This characterization is misleading because it tends to focus exclusive attention on "industrial and manufacturing." More properly and closely read, subsection (c) is actually an interpretation of the first paragraph: non-recourse revenue bonds do not pledge the public credit. Nohrr. Nothing is permitted by subsection (c) which is prohibited by the first paragraph. A governmental body may not pledge the public credit for a private entity. This distinction between an exception and an interpretation can be clearly seen if subsection (c) is contrasted with subsection (d), which permits a government body to become a joint owner *101 with, or give, lend, or use its taxing power or credit to aid, any corporation, association, partnership or person, for projects involving electrical energy generation or transmission facilities. Subsection (d) thus grants an exception to the prohibitions of the first paragraph; subsection (c) grants no such exception.
We agree with appellant that a regional headquarters facility for an insurance company is not an industrial or manufacturing plant within the meaning of article VII, section 10(c) of the Florida Constitution. However, as we have previously noted, this is not dispositive of the issue before us:
[T]he naming of these particular projects was not intended to be exclusive, denying ab initio public revenue bond financing of all other types of projects. The language employed is not that no public revenue bonds shall be issued to finance any projects except those described in Section 10(c), but that the prohibition against lending a public unit's credit does not apply to the projects described in Section 10(c). This language may or may not apply to other projects, depending upon the particular circumstances in each instance.
Nohrr, 247 So.2d at 308. See also Wald, 360 So.2d at 768.
With the adoption of the Constitution of 1968, the "paramount public purpose" test developed by case law under the Constitution of 1885 lost much of its viability. The test is still applicable when a pledge of public credit is involved, but where such pledge is not involved, as here, it is enough to show only that a public purpose is served. We recognized this change in the equation in Housing Finance Authority of Polk County:
Under the constitution of 1968, it is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong. State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971). Of course, public bodies cannot appropriate public funds indiscriminately, or for the benefit of private parties, where there is not a reasonable and adequate public interest. An indirect public benefit may be adequate to support the public participation in a project which imposes no obligation on the public, and the qualification of the direct beneficiary complies with the principles of due process and equal protection.
376 So.2d at 1160.
Chapter 159, part II, Florida Statutes (1981), contains a legislative determination that private economic development serves a public purpose and that it is in the public interest to facilitate the financing of capital projects such as a headquarters facility by the issuance of non-recourse revenue bonds. This legislative determination is entitled to great weight, particularly since it is consistent with the implicit recognition in section 10(c) that the public interest is served by facilitating private economic development. State v. Orange County Industrial Development Authority, 417 So.2d 959, 962 (Fla. 1982). Further, section 159.33 specifically provides that bonds issued under the provisions of part II shall not constitute a pledge of public credit but shall be payable solely from the revenues of the capital project.
Appellant has failed to show that the bonds in question constitute a pledge of public credit or that the legislative determination of public purpose was so clearly wrong as to be beyond the power of the legislature.
Accordingly, we affirm the trial court's judgment validating the bonds and the power of the Orange County Industrial Development Authority to issue said bonds.
It is so ordered.
ALDERMAN, C.J., and ADKINS and McDONALD, JJ., concur.
OVERTON and EHRLICH, JJ., concur in result only.
BOYD, J., dissents with an opinion.
*102 BOYD, Justice, dissenting.
I must respectfully dissent to the Court's approval of the instant industrial development bond issue. The project to be financed with the proceeds of the bond issue  an office building to serve as the management headquarters of an insurance company  is neither a project serving a paramount public purpose nor does it fall within one of the exceptions to the general prohibition expressed in article VII, section 10 of the Florida Constitution.
The general constitutional prohibition and the exceptions are provided for as follows:
SECTION 10. Pledging credit.  Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
(a) the investment of public trust funds;
(b) the investment of other public funds in obligations of, or insured by, the United States or any of its instrumentalities;
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property.
(d) a municipality, county, special district, or agency of any of them, being a joint owner of, giving, or lending or using its taxing power or credit for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person.
I disagree with the majority's characterization of article VII, section 10(c) as embodying an interpretation of rather than specific exceptions to article VII, section 10. Of course, many capital projects for public facilities serving a purely public or governmental purpose may be financed by bonds without being affected by the general prohibition of article VII, section 10. We are not concerned here with such a case.
In Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971), this Court said:
All other proposed public revenue bond projects not falling into the exempted class described in Section 10(c) of Article VII would, of course, have to run the gauntlet of prior case decisions to test whether the lending or use of public credit for any of them was contemplated. See, for example, the case of State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967), which presents a good index to decisions of this Court on both sides of the subject. It will be noted that under similar language in the 1885 Constitution (Section 10, Article IX) to that appearing in the first paragraph of Section 10 of Article VII of the 1968 Constitution the cases hold that the validity of each proposed public revenue bond financing project depends upon the circumstances, e.g., whether the purpose of the project serves a paramount public purpose, although there might be an incidental private benefit, and other criteria.
Id. at 308-09. Thus under article VII, section 10 if the bonds in any way aid a private concern and the proposed project is not an airport, a port, an industrial or manufacturing plant, or an electrical energy *103 generating or transmission facility, it must serve a paramount public purpose as that concept was developed in a long line of precedent pre-dating the 1968 constitutional revision. Under the paramount public purpose doctrine, general economic stimulation is not a sufficient public benefit to justify using public bond proceeds primarily to aid a private business. See, e.g., State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967); State v. Manatee County Port Authority, 193 So.2d 162 (Fla. 1966); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952). The legislative determination that a business headquarters is an authorized project, which would normally be entitled to great weight, is not determinative or persuasive because it is contrary to the constitution. To the extent that it conflicts with the constitution, the statute is of course invalid. The specific effects of the above-cited cases were, of course, changed by the adoption of the exceptions in article VII, section 10 in 1968. But the principle of those decisions remains intact. Since office buildings serving as business management headquarters are not among the projects authorized by the exceptions in article VII, section 10, the present proposed bond issue should be rejected.
As the majority opinion correctly points out, article VII, section 10, by prohibiting the use of the taxing power to aid a private entity, requires that bonds benefitting a private entity be payable only from facility revenues and not from taxation. This is a necessary condition to the validity of such bonds, but by itself it is not a sufficient condition. The facility or project itself must also serve a paramount public purpose. See Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1976).
Article VII, section 10 forbids any state agency to "give, lend, or use its taxing power or credit to aid any corporation, association, partnership or person." When a local authority or other agency issues bonds, it is engaging in borrowing and therefore is using its "credit." If the proceeds of the borrowing are to be used to construct an office building for a privatelyowned insurance company, as is the case here, then the local authority is unquestionably giving, using, or lending its credit to aid a corporation, association, partnership, or person. Since the bonds are non-recourse bonds, perhaps it cannot be said that the authority is giving or lending its credit, but it is at least using it. Regardless of whether the insurance company has guaranteed to hold the authority harmless and regardless of the disclaimers of recourse to any public resources in repaying the borrowed money, the simple fact remains that the authority will be the primary borrower and the purpose of the borrowing is to help the insurance company. This is strictly prohibited except as specifically allowed in the paragraphs which follow the general prohibition in article VII, section 10.
I find no substantial difference between this case and Orange County Industrial Development Authority v. State, 427 So.2d 174 (Fla. 1983), where the Court affirmed the denial of validation of bonds to finance development of a commercial television station. Our decision there was grounded not only on the lack of statutory authorization but also on the constitution. Moreover, the reasons given in my dissent in State v. Osceola County Industrial Development Authority, 424 So.2d 739, 743 (Fla. 1982), are equally applicable here. The purpose of article VII, section 10 is to prevent the complications and abuses that can result from allowing the use of the public borrowing power for the benefit of private commercial ventures. The limited exceptions allowed by the constitution cannot and should not be expanded either by the legislature or by this Court.
NOTES
[1] Storace and Gong, The Florida Industrial Development Financing Act: Public-Private Investment in Social Engineering, 24 Univ. of Fla.L. Rev. 433 (1971-72).
[2] See constitutional revision material in Supreme Court Library: Minutes, Committee of the Whole House 30-31, Aug. 22, 1967; Senate Joint Resolution 2-XXX(67) 51, engrossed Aug. 11, 1967, and Aug. 16, 1967; Joint Committee on Style and Drafting 73-75, Memorandum dated Sept. 29, 1967.
[3] Subsection 10(c)(1), initiated by the Senate, pertains to revenue bonds issued by port authorities; subsection 10(c)(2), initiated by the House, pertains to revenue bonds issued by other governmental units. Both subsections require that such bonds be payable solely from project revenues. Subsection 10(c)(1) does not require that the bonds be tax exempt whereas subsection 10(c)(2) does require that the bonds be tax exempt.