McCAIN, Justice.
This is a direct appeal from a final decree of the Dade County Circuit Court, validating and confirming the issuance of $3.85 million Industrial Development Revenue Bonds, of the County of Dade, to be issued for the purpose of financing the acquisition of an industrial or manufacturing plant for processing meats, owned and operated by Spencer Foods, Inc., and for the rehabilitation, improvement, renovation and equipment of the plant so acquired. We have jurisdiction by direct appeal pursuant to Fla.Const. Art. V., § 4(2), F.S.A. as a bond validation proceeding.
The purchase price of the Spencer Foods plant has been fixed at $2,927,535, and the estimated cost of rehabilitation, improvements, renovation, and equipment is $500,-000. The County determined that the amount necessary for defraying the cost of the project would require authorization and issuance of negotiable industrial development revenue bonds under the Florida Industrial Development Financing Act, Chapter 69-104, Laws of Florida, Fla.Stat. §§ 159.25 to 159.43, F.S.A., inclusive, in the aggregate principal amount of $3,850,000. The principal amount is to be payable solely from the revenue derived from the County’s ownership, operation, leasing, or sale of the demised premises. The County further determined, based upon reasonable estimates of the revenues to be derived from its ownership, operation, leasing, or sale of the premises, that such revenues would be adequate to pay the principal, interest and redemption premium, if any, on the bonds.
The County, as lessor, also agreed to lease to Spencer Foods, Inc., as lessee, the plant as so rehabilitated and improved together with any additional improvements as provided in the agreement securing the bonds.
The lease, which is authorized by the bond ordinance passed by the County of Dade, provides that Spencer Foods, Inc., is obligated at its own expense to operate, repair, and maintain the plant and improvements, to pay rent in the aggregate in an amount sufficient to pay all of the interest, principal and redemption premiums, if any, on all bonds issued under the Agreement, and to pay all other costs incurred by the County in connection with the financing, acquisition and construction of the plant, including the continued ownership and administration of the leased premises, except as may be paid out of the proceeds of the bonds or otherwise.
The lease further provides that its term shall not terminate earlier than the date on which all bonds including interest, principal and redemption premiums, if any, and all other obligations incurred by the County in connection with the leased premises shall be paid in full or adequate funds for such payment shall be deposited in trust. Additionally, the lease provides that the obligation of Spencer Foods, Inc. to pay rent shall not be subject to cancellation, termination or abatement until such payment of the bonds or provision for such payment shall be made.
Finally, the County determined upon advice of counsel that the interest on the bonds sought to be validated would be exempt from Federal Income taxes under ex *877 isting law, including § 103(c) of the Internal Revenue Code of 1954. On this point, in the final judgment validating the bonds, the trial judge found:
“(9) The determination by the County Board upon the advice of counsel for the County, as recited in said Ordinance No. 70-93 and in the Agreement, that the interest on the bonds authorized to be issued under said Ordinance shall be exempt from Federal income taxes under existing law constitutes a compliance with the provisions of Section 10 of Article VII of the Florida Constitution and the Act, that the Bonds will be valid and binding obligations of the County of Dade authorized to be issued under and pursuant to the provisions of the Act and said Section 10 of Article VII and to validate said bonds, and the validity of the bonds shall not be affected by any determination subsequent to their issuance that the interest on such bonds was not either at the time of such issuance or at any time thereafter, exempt from Federal income taxes.”
We are concerned with two issues on this appeal: (1) whether the project constitutes a “capital project” for which bonds of the County may be issued under the Florida Industrial Development Financing Act; and (2) whether the determination by the County upon advice of counsel prior to the issuance of the bonds that the interest on the bonds would be exempt from income taxes under the existing laws of the United States was sufficient to meet the requirement of Section 10(c) of Article VII of the 1968 Florida Constitution regarding such tax exemption, which section provides for:
“ * * * the issuance and sale by any county, municipality, special district or other local governmental body of * * * (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, * * * the. revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects * * * >>
This constitutional provision has been implemented by the Florida Industrial Development Financing Act, Chapter 69-104, Laws of Florida, Fla.Stat. §§ 159.25 to 159.43, F.S.A., inclusive. Fla.Stat. § 159.-27(5), F.S.A. defines “project”, in pertinent part, as follows:
“(5) ‘Project’ means any capital project comprising an industrial or manufacturing plant, including one or more buildings and other structures, * * * any rehabilitation, improvement, renovation, or enlargement of, or any addition to, any buildings or structures for use as a * * * processing plant * * * and including also the sites thereof and other rights in land therefor whether improved or unimproved * * * ”
“Cost”, as applied to a project, is defined in Fla.Stat. § 159.27(2), F.S.A. of the Act to embrace, in addition to construction and other costs,
“the cost of acquisition of property, including rights in land and other property, both real and personal and improved and unimproved.”
Thus, by its terms, the Florida Industrial Development Financing Act covers the type of project here contemplated. As can be seen, the rehabilitation, improvement and renovation of a processing plant is specifically permitted, and “cost” is defined to include the acquisition of improved real and personal property.
Appellant urges, however, that the Act contemplates substantial expenditures for construction which will increase opportunities for gainful employment and purchasing power and promote the industrial economy of the state. The project sub judice, it is argued, does not come within the stated objectives because nothing is to be expended for construction, and only *878 $500,000 out of a total bond issue of $3,-850,000 is to be spent for rehabilitation and improvement, with the remainder of the money going to acquisition of properties and expenses of the financing.
We agree with appellant that it is necessary to consider the legislative intent underlying the Industrial Development Financing Act. However, in this instance it appears to us that the best indicator of legislative intent is the language of the Act itself which clearly and unequivocally permits the issuance of revenue bonds to finance the type of project proposed here. It may be, as appellant urges, that the emphasis is on construction of new industrial facilities, but the clear language of the Act leads to the conclusion that the Act was also intended to cover improvements made to existing facilities. See State of Florida v. Putnam County Development Authority, Fla., 249 So.2d 6, filed May 27, 1971.
Finally, although appellants argue that this particular bond issue does not fulfill the announced objectives of the Act to promote the industrial economy of the state, to increase opportunities for gainful employment and purchasing power, to improve living conditions, and to otherwise contribute to the' prosperity and welfare of the state and its inhabitants (See Fla.Stat. § 159.26, F.S.A.), both the Board of County Commissioners and the trial judge concluded that the bond issue did promote the objectives of the Act. Under the Act, this is all that is required. See Fla.Stat. § 159.29(1), F.S.A. In fact, § 159.29 provides that such determination by the local agency as to compliance with such criteria and requirements of the Act shall be final and conclusive. This would appear to settle the issue. We hold, therefore, that the proposed bond issue is a capital project within the meaning of the Florida Industrial Development Financing Act.
It is next urged by appellant that the determination by the County of Dade upon advice of counsel that the issuance of the Bonds will be exempt from income taxes under the existing laws of the United States is insufficient to meet the requirement of Section 10(c) of the Florida Constitution of 1968.
Specifically, it is appellant’s contention that under the 1968 Florida Constitution the Legislature may authorize the issuance of industrial development bonds to the extent that the interest is exempt from Federal income taxes, not to the extent that the county board or counsel for the county determines as a matter of opinion that the interest is exempt. If the opinion is erroneous and the interest as a matter of fact is not exempt, then there is no authority to issue the bonds. Therefore, argues appellant, only the Federal Government can make a determination of exemption.
We do not agree. Although this argument is persuasive, we think it ignores the fact that the constitutional provision in question does not, by its terms, require a federal determination of this state right. Absent such language, in our judgment, it is more reasonable to assume that the framers of the provision intended that the universal practice in municipal bond matters of relying on the opinion of qualified bond counsel be followed.[1] Accordingly, we hold that it is not necessary for a local agency contemplating a revenue bond issue to obtain a determination of exemption from the Federal Government, although of course such local agency may go through the Internal Revenue Service or the U. S. Tax Court if it desires to do so.
However, this does not mean that no safeguards surround such determination *879 at the state level. The question is one of law to be decided under the facts of each case. Initially, the County Commission makes this determination upon advice of the county attorney in conjunction with qualified bond counsel, but because the question is one of law, it is subject to review by both the Circuit Court and this Court. If an erroneous determination of exemption is made, this Court is empowered to overturn such determination on appeal.
In the instant case, we can find no fault with the determination of exemption made below. The presently existing law of the United States relating to exemption of public obligations from income taxes (Section 103, Internal Revenue Code of 1954), as amended, exempts industrial development bonds not exceeding $5,000,000 in principal amount, which amount shall include certain “capital expenditures” as provided in Section 103, during the 6-year period beginning 3 years before the date of the issue of the bonds and ending 3 years after the date of issuance of the bonds.
Sub judice, the principal amount of the issuance is $3,850,000, well within the $5 million limit. Moreover, in order to protect the purchasers of the proposed issue, the lease to be entered into by the County with Spencer Foods, Inc., provides, in Section 10.16, as follows:
“Covenant as to Additional Capital Expenditures. The County and Spencer covenant and agree that no ‘capital expenditures’, as such term is defined in Section 103(c) (6) (D) of the Internal revenue Code of 1954, as amended, with regard to any meat processing facilities or other properties related to or connected with the Project which are located in any part of Dade County have been paid or incurred during the three year period before the date of the issuance of the Bonds, with the exception of the Project itself.
“The County and Spencer further covenant and agree that no such capital expenditure will be paid or incurred during the three year period ending three years after the date of the issuance of the Bonds that will in the aggregate amount, together with the principal amount of Bonds issued under the Agreement, to more than an amount which shall be One Hundred Thousand Dollars ($100,-000) less than the applicable maximum amount of the bond issue as provided in Section 103(c) (6) (C), (D), (E), (F), (G) and (H) of the Internal Revenue Code of 1954, as presently or hereafter amended, it being the purpose thereof to preserve and continue the exemption from Federal income taxes of the interest on the Bonds.
“Spencer agrees that in the event any such capital expenditure during such latter period of three (3) years shall be paid or incurred which is within the meaning of said provisions of such Code, presently in force and as they may be hereafter amended from time to time, or within the meaning of any rules or regulations promulgated by the Internal Revenue Service pursuant to said provisions of said Code, Spencer shall file with the Trustee and the County and at the place and time otherwise required by any such rules or regulations a statement which shall report each such capital expenditure, giving the date and the amount thereof.”
The lease further provides, in Section 10.17:
“Covenant to Observe Requirements Respecting Additional Capital Expenditures. The County and Spencer covenant and agree that they will comply with and observe any and all rules, regulations and requirements of the Internal Revenue Service duly promulgated pursuant to the Internal Revenue Code of 1954, as amended, pertaining to any such capital expenditures, and shall otherwise do or refrain from doing any and all things and acts to preserve and continue the exemption from Federal income taxation of all interest on the Bonds.”
*880 It would appear that the parties have made every attempt to insure that the bonds will indeed be exempt, and have in fact complied with the requirements of both the Constitution and the Act.
The judgment of the trial court is therefore affirmed.
It is so ordered.
ERVIN, CARLTON and DEKLE, JJ., concur.
ROBERTS, C. J., dissents.

. A study of the transcript of the proceedings of the Convention of the Florida Constitutional Revision Commission and the Constitutional Revision Session of the Committee of the whole House, (July 31 and August 21, 1967) and constitutional revision material available in the Supreme Court library sheds no light on the intent of the framers in adopting this language.