424 So.2d 753 (1982)
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 177, etc., Appellant,
v.
JACKSONVILLE PORT AUTHORITY, etc., Appellee.
No. 62934.
Supreme Court of Florida.
December 21, 1982.
John F. MacLennan of Kattman, Eshelman & MacLennan, Jacksonville, for appellant.
*754 Robert M. Ervin and Thomas M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, Courtney Wilder Stanton, Jacksonville, and Barry J. Miller, Detroit, Mich., for appellee.
BOYD, Justice.
This cause is before the Court on appeal from a judgment of the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, validating bonds proposed for issuance by the Jacksonville Port Authority. We have jurisdiction of the appeal pursuant to article V, section 3(b)(2), Florida Constitution, and section 75.08, Florida Statutes (1981).
The Jacksonville Port Authority, an independent agency of local government authorized to issue industrial development revenue bonds,[1] initiated this proceeding below by filing a complaint, pursuant to chapter 75, Florida Statutes (1981), for validation of bonds not exceeding $30,000,000 in aggregate principal amount. As described in the complaint and the bond issue resolution adopted by the Authority, the proceeds of the bond issue are to be used to finance the acquisition, construction, improvement, and installation of a floating drydock and associated mooring facilities, and the related costs of the capital project. The Authority plans to sell the project thus financed to Jacksonville Shipyards, Inc., a private corporation, pursuant to an installment sale contract. Thus the facilities to be financed will be operated, and eventually owned, by Jacksonville Shipyards, Inc.
Answers to the complaint were filed by the State of Florida and by the International Brotherhood of Electrical Workers, Local Union No. 177. After the hearing the court entered judgment validating the bonds and making detailed findings of fact. IBEW, Local No. 177 brought this appeal. The State did not appeal the judgment of validation.
According to the issuing Authority's bond resolution, the complaint for validation, and the judgment of the circuit court, Jacksonville Shipyards, Inc., has entered into an installment purchase contract with the Authority whereby it will be obligated to make timely payments in amounts that will be sufficient to pay the principal, premium, and interest payable on the bonds as such amounts will become due. The trial court found that Jacksonville Shipyards will be able to make such payments and that the bonds will be paid solely with the revenues thus derived from the installment sale contract. Fruehauf Corporation, the parent company of Jacksonville Shipyards, Inc., has executed a guaranty of payment as further security for the installment sale contract, and the trial court relied in part on this guaranty in finding that there was adequate security for the purchaser's obligation under the installment sale contract. The documents of record show that the Authority, as it receives payments from the purchaser, will in turn make payments to a trustee for the benefit of bondholders. The bond resolution states, the complaint alleged, and the trial court found that the payment obligation on the bonds shall not constitute a debt, liability, or obligation of the Jacksonville Port Authority, the City of Jacksonville, or the State of Florida or any agency or subdivision thereof.
In seeking validation of the proposed bonds, the Jacksonville Port Authority invokes the statutory authority granted to it by chapter 159, part II, Florida Statutes (1981), the Florida Industrial Development Financing Act. By the judgment of validation, the court sustained the Authority's allegation that the proposed project serves the purposes of and is authorized and permitted by the statute.
Appellant International Brotherhood of Electrical Workers, Local No. 177, contends that the judgment of validation is defective and must be reversed because of the lack of a finding that the project serves *755 a paramount public purpose. This argument is without merit. We find that the constitution itself in effect declares that capital projects such as the one in question meet the constitutional public purpose requirement, and therefore judicial inquiry into the question is unnecessary.
Article VII, section 10 of the Florida Constitution prohibits the state and its subdivisions from becoming a joint owner with or stockholder of, or giving, lending, or using its taxing power or credit to aid any corporation, association, partnership, or person. Article VII, section 10 is the source of the requirement that capital projects financed through public bonds must serve a paramount public purpose.[2] This constitutional requirement has been the subject of much discussion and interpretation in decisions of this Court.[3] Whatever the judicial interpretation, however, certain kinds of capital projects are declared not to be within the prohibition embodied in article VII, section 10, for the provision goes on to provide in pertinent part:
but this shall not prohibit laws authorizing:
.....
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects.
Section 159.26, Florida Statutes (1981), recites the legislative intent that the Florida Industrial Development Financing Act includes among its authorized projects those which are permitted pursuant to article VII, section 10(c). Since we find that the project in question falls within the exception for airports and ports under article VII, section 10(c)(1), we hold that it is conclusively established that the project is a constitutionally permissible one.
Appellant's second argument is that there is an insufficient factual basis for the trial court's conclusions that the project meets the statutory requirements. In addition to being constitutionally permitted, the proposed project must, as appellant correctly argues, satisfy the criteria established by the authorizing statute. The judgment of validation, however, comes to us with a presumption of correctness, and the burden is on the appellant to point out from the record the failure of the evidence to support the conclusions of the issuing authority and of the trial court.[4]
The definition of the word "project" in section 159.27(5), Florida Statutes (1981), contains the essence of the authority conferred on the various local agencies that operate under the act. The definition reads in pertinent part:
"Project" means any capital project comprising . .. an airport or port facility ... including one or more buildings and other structures, whether or not on the same site or sites; any rehabilitation, improvement, renovation, or enlargement of, or any addition to, any buildings or structures for use as .. . an airport or port facility ... or other facilities for or used in connection with ... an airport or port facility ... and including also the sites thereof and other rights in land therefor whether improved or unimproved, machinery, equipment, site preparation *756 and landscaping, and all appurtenances and facilities incidental thereto, such as warehouses, utilities, access roads, railroad sidings, truck docking and similar facilities, parking facilities, office or storage or training facilities, public lodging and restaurant facilities, dockage, wharfage, solar energy facilities, and other improvements necessary or convenient for any ... airport or port facility... and any one or more combinations of the foregoing.
The numerous omissions indicated in the above-quoted statute are references to the various other kinds of facilities, not relevant to this case, encompassed in the definition of the term "project."
Section 159.29, Florida Statutes (1981), sets out the criteria by which local agencies are to be guided in undertaking projects pursuant to the act. In essence, section 159.29 requires the local agency to conclude that the project will promote the economic well-being of the community served by the local agency; that the purchaser and operator of the project be financially responsible and able to fulfill its financial and managerial obligations; that the local agency will be able to cope satisfactorily with the impact of the project; that the operation, maintenance, and repair of the project be adequately provided for; and that the proceeds of the bond issue be expended on the costs of the project as statutorily defined.
In assessing appellant's argument it is important to note that section 159.29 also provides: "[H]owever, the determination of the local agency as to compliance with such criteria and requirements shall be final and conclusive." This provision placed the burden on the appellant to show before the trial court that the Authority's findings were completely without foundation. At the hearing below, appellant made no such showing. To prevail on appeal, appellant must show that the trial court's approval of the local agency's action is completely erroneous.[5] Appellant's challenge, however, consists of mere conclusory statements, and fails to establish that the judgment is unsupported by evidence.
Moreover, we find that the record affirmatively supports the conclusion that the proposed project will serve the purposes and meet the criteria of the authorizing statute. The record shows that the new facilities will promote the economic growth and development of the Port of Jacksonville and thereby the economic well-being of the City of Jacksonville, the surrounding region, and the State of Florida. Documents in the record also show the financial soundness of the project, the ability of the purchaser to meet its obligations, the ability of the community to deal with the impact of the project, and that the bond proceeds will be devoted to the costs of the project as statutorily defined. See § 159.29, Fla. Stat. (1981).
The appellant also questions the necessity or propriety, under section 159.29, of certain decisions of the Authority pertaining to specific features of the port improvement project. Appellant suggests that the economic benefit of the project is called into question by the fact that the facilities to be installed are to be acquired from a foreign company. This suggestion is without merit. Appellant can present no legal basis for interference with the Authority's exercise of discretion in this regard.
Appellant also raises a question about the sufficiency of the Authority's showing with regard to the tax-exempt status of the interest paid on the bonds. Although we believe that the Authority's allegation, and the trial court's finding, on this matter are adequately documented based on opinions of bond counsel,[6] we find appellant's challenge to be without merit because article VII, section 10(c) only requires tax-exempt status in cases arising under clause (2) pertaining to industrial or manufacturing plants. Article VII, section 10(c)(1) does not demand that bonds for airports and ports be eligible for the tax exemption.
*757 For the foregoing reasons, we find the appeal to be groundless. Therefore, the judgment of validation is affirmed. No petition for rehearing will be considered.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] See ch. 63-1447, Laws of Fla., as amended by ch. 73-452, Laws of Fla.
[2] State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980); State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971).
[3] See, e.g., State v. Leon County, 410 So.2d 1346 (Fla. 1982); State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971); State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967); Panama City v. State, 93 So.2d 608 (Fla. 1957); Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953).
[4] State v. Leon County, 400 So.2d 949 (Fla. 1981); Doane v. Lee County, 376 So.2d 852 (Fla. 1979).
[5] State v. Leon County, 410 So.2d 1346 (Fla. 1982); State v. County of Dade, 250 So.2d 875 (Fla. 1971).
[6] State v. County of Dade, 250 So.2d 875 (Fla. 1971).