# HARRIS, et al. v. DADE COUNTY, etc., et al.

## Case No. 84-42383

Eleventh Judicial Circuit, Dade County

August 23, 1985

**APPEARANCES OF COUNSEL**

George Knox, Long, Knox, Mays, P.A., for plaintiff.

Rosenberg, Reisman, Glass, for defendants.

Samuel S. Goren for South Florida Regional Planning Council.

Robert A. Ginsburg for Dade County.

Robert A. Shevin, Sparber, Shevin, et al., for Dolphin Stadium.

Linda Miklowitz for Department of Transportation.

David Jordan for Department of Community Affairs.

## OPINION OF THE COURT

MARTIN GREENBAUM, Circuit Judge.

This cause has come to be heard upon the collective Motions to Dismiss filed of record by the various Defendants addressed to the Plaintiffs' Third Amended Complaint.

The Plaintiffs, Mildred Harris and Barry Young, are property owners within the prescribed definition of the boundaries of the property that is the subject matter of this law suit, and as such will be referred to as Plaintiffs. (The court has permitted the Rolling Oaks Homeowners' Association to be a party plaintiff but has restricted their representation to only those property owners residing within the prescribed area as established by the boundaries of notice as required by statute and ordinance and reserving them solely to the rights of the plaintiffs Harris and Young. It is specifically ordered that the Association has no additional rights whatsoever in this matter).

For descriptive purposes the Defendants shall be identified as follows: Dade County shall be known as The County; all the Mortons collectively shall be known as Morton; Dolphin Stadium Corp. shall be known as the Corporation; the State of Florida Department of Community Affairs and DOT shall be known as State of Florida; South Florida Regional Planning Council shall be known as The Council and Merritt Steirheim, County Manager, shall be known as Manager.

This complaint involves property located in the Northwest section of Dade County, Florida, commonly described as the Lake Lucerne property. (The legal description is more particularly described in the exhibit attached hereto and made Court exhibit A.)* The Mortons have donated certain properties to the County subject to certain rights of reversion. The County has accepted the property with all the reversionary rights contained in the deeds of conveyance. The Corporation has entered into negotiations to lease the property from the County for the purposes of constructing a sports arena and attendant commercial properties.

The plaintiffs have filed a multi-count, multi-paragraph complaint in which they have set forth various legal objections to the progress of the development of this tract of land. The complaint reads in Recision, Declaratory Relief, Temporary Injunction and other relief which is set up in nine separate counts.

In addressing each count the Court is mindful of the manner in

---

* The legal description referred to above was not included in the publication of this decision.

which the counts are developed. Notwithstanding that there are over-lappings of reliefs in the various counts, this Order shall address itself to each count and to those portions of the various counts which overlap and to those principles of law as they relate to the various counts.

This law suit was originally filed on the 21st day of December, 1984. The positions of the parties have been carefully and fully articulated in their Brief and citations that are appended to their brief.

Inasmuch as the court has determined that no constructive purpose would be accomplished, there shall be no further oral argument.

The plaintiffs are proper parties and have standing to institute this suit.

Special damage need not be shown if the taxpayer or property owner is within the affected range of the property which requires actual notice before the rezoning may be considered by the legislative body. *Renard v. Dade County*, 249 So.2d 500 (Fla. 3rd DCA 1971).

Provision 6 of the "Covenant Governing Land Development" applicable to the subject property provides:

6. Modification: Release:

This Agreement may be modified, amended or released as to any portion of the land described herein by a written instrument executed by the then-owner of the fee-simple title to the lands to be affected by such modification, amendment or release, along with a *majority of the property owners within 350 ft. of the property* for which such modification is proposed, as well as along with *a majority of the property within 350 ft. of the property* shown in the Plan, and approved after public hearing by Resolution of the Board of County Commissioner or Zoning Appeals Board of Metropolitan Dade County, Florida, whichever by law has jurisdiction over such subject matter. (Emphasis added).

The Supreme Court, in *Renard v. Dade County*, 261 So.2d 832 (Fla. 1972), held:

An aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest which is or will be affected by the action of the zoning authority in question. The interest may be one shared in common with a number of other members of the community as where an entire neighborhood is affected.

In passing on a Motion to Dismiss the Court must assume all facts alleged in the complaint to be true, but, mere statements of opinion or conclusions unsupported by specific facts will not suffice. *Sheir v.*

71

*Metropolitan Dade County*, 375 So.2d 1114 (Fla. 3rd DCA 1979). The Court is required to consider all exhibits attached to and incorporate in the complaint. An inconsistency between general allegations of material fact in the complaint and specific facts revealed by the attached or incorporated exhibits shall have the effect of neutralizing the allegations, rendering the pleading objectionable. *Pepper v. Lasseter*, 247 So.2d 736 (Fla. 3rd DCA 1971).

Having considered all pleadings, exhibits attached thereto, and memoranda submitted by the parties, the Court addresses the issues raised therein.

## COUNT I

## ALLEGATIONS THAT GIFT OF PUBLIC LAND TO PRIVATE FOR-PROFIT DEVELOPER NOT A PUBLIC PURPOSE

The Dade County Board of County Commissioners is empowered by statute with the authority to acquire property for public purposes by purchase, lease, gift or bequest. Sections 125.01, 125.355, 127.01 and 159.03, Florida Statutes. See also 12 Fla.Jur.2d, *Counties* Sections 228-232.

Construction of a sports stadium has been determined, both legislatively and judicially, to be a proper public purpose and in the public interest to facilitate the development and construction of such capital projects.

The Florida Industrial Development Financing Act, Chapter 159, Florida Statutes, provides:

Section 159.26(3): In order to improve the prosperity and welfare of the state and its inhabitants . . . to promote the rehabilitation of enterprise zones . . . and the economic development of the state, and to increase purchasing power and opportunities for gainful employment, it is necessary and in the public interest to facilitate the financing of the projects provided for in this part and to facilitate and encourage the planning and development of these projects . . . in order to more effectively and efficiently serve the interests of the greatest number of people in the widest area practicable; and

Section 159.26(4): The purposes to be achieved by such projects and the financing of them . . . are predominantly the public purposes stated in this section.

Section 159.27(5): "Project" means any capital project comprising a . . . tourism facility.

Section 159.27(11): "Tourism facility" means any property used for

72

or useful in connection with . . . spectator or participatory sports facilities.

In *State v. City of Tampa*, 146 So.2d 100 (Fla. 1962), the Supreme Court stated:

This court has frequently approved the construction of a stadium as a proper public purpose.

In *Linscott v. Orange County Indus. Dev. Auth.*, 443 So.2d 97 (Fla. 1983), the Supreme Court held:

It is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong. An indirect public benefit may be adequate to support the public participation in a project which imposes no obligation on the public. Chapter 159, part II, Florida Statutes, contains a legislative determination that private economic development serves a public purpose and that it is in the public interest to facilitate the financing of capital projects such as sports facilities. This legislative determination is entitled to great weights, particularly since it is consistent with the implicit recognition in Article VII, section 10(c) of the Florida Constitution that the public interest is served by facilitating private economic development.

The Supreme Court has rejected the argument now being made by the plaintiffs that because the project is to be operated by a private, investor-owned entity, it does not serve a public purpose. *State v. Osceola County Indus. Dev. Auth.*, 424 So.2d 739 (Fla. 1982). County property may be leased to a private concern to carry on a private enterprise consistent with and in furtherance of a public purpose. *Sunny Isles Fishing Pier v. Dade County*, 79 So.2d 667 (Fla. 1954).

The Board of County Commissioners lawfully and in a proper exercise of their discretion and authority accepted the donation of the subject property subject to the condition that a lease be entered into with the Dolphin Stadium Corporation for the construction of a sports stadium.

## COUNT II

### ALLEGATION OF VIOLATION OF REQUIREMENT FOR PUBLIC HEARING WITH ADEQUATE NOTICE

The acceptance of the donation of the subject property by the Board of County Commissioners was conditional upon the lease of same to the Dolphin Stadium Corporation:

WHEREAS, the Lake Lucerne Site is donated upon the condition

**73**

that a 99-year lease be entered into with Dolphin Stadium Corporation; and

WHEREAS, this Board desires to accept said land subject to the condition that the County and Dolphin Stadium Corporation enter into a lease for a term of 99 years for a sports and recreational complex and other developments compatible therewith. County Commission Resolution R-857-84

The conveyance of the subject property to Dade County was conditional upon the construction of a sports and recreational complex:

This conveyance is made for the purpose of permitting the development and construction of a Sports and Recreational Complex . . . In the event that development . . . has not been commenced on or before September 1, 1986, then the fee simple title to all of the land conveyed hereby shall automatically revert to the Grantors or their assigns. Warranty Deed between Emil and Lottie Morton and Dade County, June 24, 1985.

Pursuant to Section 125.35, Florida Statutes, the Board of County Commissioners may lease real property belonging to the County whenever the Board determines that it is to the best interest of the county to do so.

The notice and bid requirements of Chapter 125, Florida Statutes, are not applicable to the lease of the subject property.

Section 125.39, Florida Statutes "Nonapplicability to county lands acquired for specific purposes" provides:

The provisions of this law shall not be construed to cover the sale or disposition of any land conveyed to any county for a specific purpose and containing a reversionary clause whereby said land shall revert to the grantor or grantors upon failure to use said real property for such purpose.

The conditional acceptance and lease of the subject property constitute lawful exercises by the board of their discretionary powers. As stated in *Broward County Rubbish Contractors Assn. v. Broward County*, 112 So.2d 898 (Fla. 2d DCA 1959):

A court cannot invade the administrative duties of the board of county commissioners, but can determine only whether their action was illegal vel non. Where a public body is exercising discretionary powers within the orbit of laws affecting it, the court will not assume jurisdiction or exercise power to interfere with such body.

74

## COUNT III
### ALLEGATION OF ILLEGAL CONTRACT FOR ZONING

Resolution R-857-84, the warranty and quit-claim deeds incorporated therein, and the lease of the subject property by Dade County to the Dolphin Stadium Corporation acknowledge that, in the event the subject property is not rezoned the property would revert to the grantors.

The Warranty Deed of June 24, 1984, between the Mortons and Dade County States:

> In the event that development of a Sports Stadium has not been commenced on or before September 1, 1985, then the fee simple title to all of the land conveyed hereby shall automatically revert to the Grantors or their assigns. For purposes hereof development shall be deemed to have been commenced at such time as . . . there shall have been duly issued all requisite Permits from governmental agencies having jurisdiction authorizing the construction of the Sports Stadium.

If the subject property is not rezoned, the requisite permits cannot be issued and construction cannot be commenced.

Paragraph 8, *Consent of Lessor*, of the July 3, 1984, lease between Metropolitan Dade County and the Dolphin Stadium Corporation expressly contradicts the allegation of an illegal contract of zoning.

> Lessor covenants and agrees that upon request of Lessee, it will forthwith execute, acknowledge and deliver any and all instruments so requested in order to consent to any zoning applications . . . or such other documents as may reasonably be required relative to obtaining a modification of the zoning . . . for development of or construction upon the Land, provided that Lessor incurs no out-of-pocket expense of any kind. Lessor's consent to any zoning applications shall *not* bind the Board of County Commissioners, the Zoning Appeals Board, the Building and Zoning Department or the Planning Department of Metropolitan Dade County to agree to or grant any zoning changes or approvals requested therein. (Emphasis added).

Provision 8 of the lease, directly addressing the issue of rezoning, expressly provides that the zoning authorities of Dade County are not contractually obligated to agree to or grant a zoning change on the subject property.

As stated in *Housing Authority of the City of Melbourne v. Richardson*, 196 So.2d 489 (Fla. 4th DCA 1967):

**75**

An agreement to cooperate and, insofar as it might lawfully do so, make such changes in any zoning of the site and surrounding territory as were reasonable and necessary for the development and protection of the project and surrounding territory was not illegal on the ground that it constituted an unlawful delegation of the power to rezone or an improper zoning action. This is simply a restatement of pre-existent criteria and obligations. There is no provision in the contract that could be construed as a delegation or abdication of zoning power or that be considered as inimical or a diminution of the plaintiffs' rights in zoning.

## COUNT IV

### ALLEGATION THAT DEFENDANTS ESTOPPED OR PROHIBITED TO CHANGE ZONING

The plaintiffs have failed to allege the elements essential to establish a cause of action justifying the relief of estoppel. As stated in *Jones v. First Virginia Mortgage and Real Estate Trust*, 399 So.2d 1068 (Fla. 2d DCA 1981):

Equitable estoppel, in the context of the exercise of police power regarding zoning, arises only where one with a legally recognizable interest in property has made such a substantial change in his position, in good-faith reliance upon some act or omission of the government, that it would be highly inequitable and unjust to destroy rights he has acquired. One who purchases property has no legal right to assume that existing zoning may not change. All that one is entitled to assume is that zoning regulations will not be altered to his detriment, unless the change bears a substantial relation to the health, morals, welfare or safety of the public.

The purchase of land does not create a right to rely on existing zoning. *Town of Largo v. Imperials Homes Corp.*, 309 So.2d 571 (Fla. 3rd DCA 1975).

No one has a vested right to require a zoning classification to remain consistent, especially in an area of growth and changed conditions. *Sarasota County v. Walker*, 144 So.2d 345 (Fla. 2d DCA 1962).

It would be inappropriate as a violation of the doctrine of separation of powers for the court to estop a legislative activity, the enactment of zoning ordinances, while the administrative process is still in progress.

It has been uniformly held in this state that the function of a board of commission in the enactment of zoning ordinances is a purely legislative function. *Harris v. Goff*, 151 So.2d 642 (Fla. 1st DCA 1963).

76

The rezoning of property is a matter requiring the exercise of legislative power. *City of Miami Beach v. Weiss*, 217 So. 2d 836 (Fla. 1969).

The courts of this State have been extremely reluctant to interfere with the action of administrative bodies in the proper performance of their responsibilities, and have done so only where there is a clear and unmistakable violation of constitutional and statutory rights of the affected parties. Mere allegations that an administrative agency might take actions which, if adopted, would be unlawful or ineffective constitute no ground for injunctive interference with the internal functioning of such agency. *Tampa Port Authority v. Deen*, 179 So.2d 416 (Fla. 2d DCA 1965).

The classification of lands under zoning ordinances involves the exercise of the legislative power, preventing the courts under the doctrine of separation of powers from the invasion of this field. *City of Miami Beach v. Weiss*, supra.

By provision 6 of the 1977 "Covenant Governing Land Development", defendants may seek a modification of or release from the terms of the restrictive covenant on the subject property.

6. Modification; Release:

This Agreement may be modified, amended, or released as to any portion of the land described herein by a written instrument executed by the then-owner of the fee-simple title to the lands to be affected by such modification, amendment or release.

The court should not interfere with the proper exercise of a right expressly provided.

Where the rights and interests of the parties are definitely and clearly stated in a written contract, the terms of the contract, fairly interpreted, should control. *McGhee Interests v. Alexander National Bank*, 135 So. 545 (Fla. 1931).

Courts have no power to rewrite, alter, or change contracts when made, but have the power of interpretation according to established rules. *Pierce v. Issac*, 184 So. 509 (Fla. 1938).

Absent a release from or modification of the covenant Dade County cannot abolish or abrogate the restrictive covenant by rezoning the subject property.

It is well settled that the zoning and rezoning of real property cannot in any way abolish, abrogate or enlarge lawful contractual covenants and restrictions pertaining thereto. *Staninger v. Jacksonville Expressway Authority*, 182 So.2d 483 (Fla. 1st DCA 1966).

**77**

Any judicial determination of the continued viability of the restrictive covenant prior to a final administrative action rezoning the subject property would be unnecessary and premature.

## COUNT V

### ALLEGATION THAT PROMISED REZONING IS SUBSTANTIALLY INVALID

Dade County, which has the power to enact zoning ordinances, also has the power to amend them. Questions of zoning policy, of benefit or detriment, of what is good or bad for the public are legislative matters which the courts have no power to direct. 7 Fla.Jur.2d, *Building, Zoning and Land Controls*, Sections 55 and 56.

No final, reviewable action rezoning the subject property has been taken by the Board of County Commissioners.

> Mere allegations that a board of county commissioners is threatening to pass resolutions or edicts which, if passed, will be unlawful or ineffective, constitute no ground for injunctive interference with the preliminary internal functioning of the county board. *Hernandez v. Board of Commissioners of Hillsborough County*, 153 So.2d 790 (Fla. 1934).

> An action to enjoin the county from rezoning property was prematurely brought, where the county by resolutions had merely indicated an intention to rezone the property in futuro. If and when the rezoning takes place, defendants may challenge the decision by appropriate means. Until that time the suit is premature. *Charlotte County v. Venture Out in America*, 243 So.2d 249 (Fla. 2d DCA 1971).

An application to rezone the subject property is currently pending before various state and county administrative agencies, departments and committees.

> Administrative remedies must be exhausted before resorting to the courts to review administrative action. *City of Coral Gables v. Sakolsky*, 215 So.2d 329 (Fla. 3rd DCA 1968).

> Judicial review will be denied until the administrative remedies available have been exhausted and, by refusing to interrupt the administrative process, several policies are advanced: a more complete record is developed; the agency is allowed to exercise its discretion or expertise; the agency is allowed to correct its own errors; and the agency is not weakened by easy circumvention. *Louis v. Nelson*, 544 F.Supp. 973 (1982).

78

Absent a formal rezoning ordinance, the court shall neither enjoin completion of the legislative process nor grant declaratory relief as to the validity of the proposed ordinance prior to its actual adoption. The only proper method for testing the legality or constitutionality of a legislative enactment is by judicial review after the enactment and passage of the offending ordinance. *Citizens for Orderly Development & Environment v. City of Phoenix*, 540 P.2d 1239 (1975).

Therefore, Counts II, III, V and IX as premised upon the allegations that the subject property has been rezoned or that rezoning is contemplated or anticipated shall be dismissed on the grounds that such counts are premature and that the plaintiffs have failed to exhaust those administrative remedies available under the Code of Metropolitan Dade County and Section 380.06, Florida Statutes.

## COUNT VI

### ALLEGATION OF VIOLATION OF LAWS PROHIBITING OBLIGATION OF UNAPPROVED FUNDS OR PLEDGING CREDIT

The general allegations of Count VI that the public credit has been pledged or that public funds shall be expended to construct the sports stadium directly contradict the express terms of exhibits attached to and incorporated in the complaint. See Plaintiffs' Appendix 1; *Pre-Development Agreement*:

The Developer is in the process of undertaking by use of *private financing*, the construction of a $90 million dollar football and adaptable baseball stadium. This undertaking by the Developer by the use of *private financing* is an innovative and creative method and if not successful, may result in the taxpayers of the State of Florida ultimately bearing the responsibility and cost for the reconstruction or the construction of a new sports facility within the South Florida area . . . If the *private financing* mechanism is not available, a burden may be placed on the taxpayers within the South Florida area. (emphasis added).

The Supreme Court has declared in *Linscort v. Orange County Indus. Dev. Authority*, supra, that:

Industrial development revenue bonds do not constitute a prohibited pledge of public credit.

Pursuant to Section 129.07, Florida Statutes, it is unlawful for the board of county commissioners to expend or contract for the expenditure in any fiscal year more than the amount budgeted. As stated in *City of Miami v. Gioia*, So.2d 780 (3rd DCA 1969):

79

Until proof to the contrary appears, it is to be presumed that public officers properly perform their duties, and that they carry them out in good faith. It is presumed that public officials know what their authority is under the law, and that such laws have been faithfully observed. Similar presumptions apply to functions to be performed by public officers in the future. It is that they will obey the law and the constitution, and that they will fully discharge their duties as the law directs.

Prior to such an expenditure or contract to expend, an action under Section 129.07, Florida Statutes, would be premature.

## COUNT VII

### ALLEGATION OF VIOLATION OF INDUSTRIAL REVENUE BONDS STATUTE

Dade County is a "local agency" empowered to issue industrial development revenue bonds pursuant to the Florida Industrial Development Financing Act. Sections 159.27(4), 159.28 and 159.29, Florida Statutes.

The proposed sports stadium provides a public purpose, constitutes a "project" authorized by the Act and is qualified for the issuance of industrial revenue bonds. *State v. City of Tampa,* supra, and Sections 159.26(3), 159.27(5) and (11) and 159.34, Florida Statutes.

Pursuant to Section 159.29, Florida Statutes, no financing agreement for a project shall be entered into with a party that is not financially responsible and fully capable and willing to fulfill its obligations under the financing agreement. Determination by the Board of County Commissioners that the party is financially responsible, that the proposed bond issue promotes the objectives of the Florida Industrial Development Financing Act and that the criteria and requirements of the act have been complied with are final and conclusive. *State v. Dade,* 250 So.2d 875 (Fla. 1971).

It is the sole purpose of a bond validation proceeding pursuant to Chapter 75, Florida Statutes, to determine whether the issuing body has the authority to act under the Constitution and the laws of this state and to ensure that it exercised such authority in accordance with the spirit and intent of the law. *McCoy Restaurants v. City of Orlando,* 392 So.2d 252 (Fla. 1980). The procedures of Chapter 75 are exclusive; a suit for declaratory judgment to determine the validity of the bonds is inappropriate. An opinion by this court upon the merits of the cause or upon the validity or invalidity of the industrial revenue bonds would be nothing more than an unauthorized advisory opinion or the giving

80

of legal advice. *Bessemer Properties v. City of Opa Locka*, 74 So.2d 296 (Fla. 1954).

## COUNT VIII

## ALLEGATION OF VIOLATION OF LAW REQUIRING BIDDING IN LEASE OF COUNTY PROPERTY

The provisions of Section 125.35, Florida Statutes, requiring that county-owned real property be leased only to the highest and best bidder are not applicable to the disposition of the subject property conveyed to the county for a specific purpose subject to reversion to the grantor upon failure to use said property for such purpose. Section 125.39, "Nonapplicability to county lands acquired for specific purposes", Florida Statutes.

## COUNT IX

## ALLEGATION OF VIOLATION OF CONSTITUTIONAL CIVIL RIGHTS

Prior to a final, reviewable decision by the Board of County Commissioners regarding the application for the proposed rezoning of the subject property, any action based upon the taking or violation of rights secured by Amendments V and XIV of the Constitution of the United States and Section 1983 of Title 42, United States Code, is premature.

A claim that the application of government regulations effects a taking of a property interest is not ripe until the government has reached a final decision regarding the application of the regulation to the property at issue. *Williamson County Regional Planning Commission v. Hamilton*, 53 L.W. 4696 (1985).

The Court in the *Williamson* case states further that the resolution of the claim that regulation can constitute a "taking" depends, in significant part, upon an analysis of the effect of the Commission's application of the zoning ordinance. That effect cannot be measured until a final decision is made as to how the regulation will be applied to the property. Prior to that final decision, a claim is premature, whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment or as a violation of 42 U.S.C.S. 1983.

The plaintiffs have failed to allege that there has occurred any taking or deprivation of rights or property, allegations essential to state a cause of action for a violation of 42 U.S.C.S. 1983 or Amendments V and XIV of the Constitution of the United States:

81

The pertinent text of the Fourteenth Amendment provides:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law.

The pertinent text of the Fifth Amendment provides:

No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

In any Section 1983 action the initial inquiry must focus on whether the two essential elements to a Section 1983 action are present:

(1) whether the conduct complained of was committed by a person acting under color of state law; and

(2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parrat v. Taylor*, 451 U.S. 527 (1981).

Paragraph 68 of the Plaintiffs' Third Amended Complaint alleges only a taking or destruction of rights or property in futuro.

Construction of developments as large as are proposed for recreational and commercial use *will eventually require taking* of plaintiffs' private lands by eminent domain to accommodate road and rail traiffic. Alternatively, traffic congestion and noise *will destroy* the present quality of residential living. (emphasis added).

As stated *Williamson v. Hamilton*, supra:

The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking. If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

Similarly, as stated in *Parrat v. Taylor*, supra:

Nothing in the Fourteenth Amendment protects against all deprivations of life, liberty, or property by the state, but only against deprivations without due process of law; merely establishing a deprivation of property under color of state law does not establish a violation of the Fourteenth Amendment. The existence of an ade-

82

quate state remedy to redress property damage inflicted by a state officer avoids the conclusion in an action under 42 U.S.C.S. 1983 that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment.

For the reasons that no taking or deprivation has occurred nor has any been alleged and there have been no allegations that adequate procedures do not exist for seeking just compensation or redress for property damage, the plaintiffs have failed to state a cause of action for violation of constitutional civil rights.

Accordingly, Counts I, II, III and VIII are dismissed with prejudice. Counts IV, V, VI, VII and IX are dismissed without prejudice. The plaintiffs may apply for leave to amend these counts upon future final, reviewable actions by the Dade County Board of County Commissioners.

This Exhibit "A" identifies the property which is the subject matter of a Lease dated July 3, 1984, between Metropolitan Dade County and Dolphin Stadium Corporation, which property was conveyed to Metropolitan Dade County by the Mortons.

The property is described in the Lease in accordance with the Legal Description attached as Exhibit A-1 following, and the two (2) parcels conveyed to Metropolitan Dade County, which combined formed the property described in the Lease, are described respectively in Exhibits A-2 and A-3 annexed.

84

## LEGAL DESCRIPTION OF A 161 ACRE PARCEL OF LAND

The Land is located within the confines of a part of Tracts 1 through 9, inclusive, MIAMI GARDENS SUBDIVISION, recorded in Plat Book 2 at Page 96, and a part of the N.E. 1/4 of the N.E. 1/4 of Section 3, Township 52 South, Range 41 East, all in the Public Records of Dade County, Florida.

The Land is also located within the confines of a Southerly part of the JOHN W. NEWMAN SUBDIVISION OF SECTION 34, Township 51 South, RANGE 41 East, Recorded in Plat Book 1, at Page 118, of the Public Records of Dade County, Florida. The exterior boundary of the Land being more particularly described as follows:

Commence at the S.W. corner of Section 34, said corner also being the N.W. corner of Section 3, and run N. 0° 07' 44" W. along the Westerly line of Section 34, a distance of 1944.71 feet to a point on the Southerly line of the South Florida Flood Control line of Snake Creek Canal; Thence run S. 86° 11' 45" E. along the Flood Control line, a distance of 984.74 feet to the Point of Beginning (P.O.B.) of the Land hereinafter described; Thence continue S. 86° 11' 45" E., along the Flood Control line, a distance of 4312.48 feet to a point on the Easterly line of Section 34; Thence run S. 0° 00' 12" E. along the Easterly line of Section 34, a distance of 407.95 feet to a point; Thence run N. 86° 11' 45" W., parallel to the aforesaid Flood Control line, a distance of 1243.55 feet to a point; Thence run S. 0° 00' 12" E., parallel to the Easterly line of Section 34, crossing the dividing line between Sections 34 and 3, said dividing line contiguous one to the other, a distance of 1432.22 feet to a point on a circular curve concave Northwesterly and having a radius of 2103.495 feet; Thence run Southwesterly along the arc of said curve, through a central angle of 28° 16' 42", a distance of 1038.18 feet to the Point of Tangency (P.T.); Thence run S. 88° 45' 09" W., tangent to the last-mentioned curve and parallel to the Northerly line of Section 3, a distance of 400.00 feet to a point on the Westerly line of the N.E. ¼ of Section 3, said point being the beginning of a curve concave Northeasterly and having a radius of 1557.96 feet; Thence run Northwesterly along the arc of said curve through a central angle of 19° 06' 26", a distance of 519.55 feet to a Point of Reverse Curvature (P.R.C.) of a circular curve concave Southwesterly and having a radius of 1557.96 feet; Thence run Southwesterly along the arc of said curve, through a central angle of 19° 06' 26", a distance of 519.55 feet to the Point of Tangency (P.T.) of said curve; Thence run S. 88° 46' 51" W., tangent to the last-mentioned curve, parallel to the Northerly line of Section 3, a distance of 300.00 feet to a Point of Curvature (P.C.) of a circular curve concave Northeasterly and having a radius of 1208.58 feet; Thence run Northwesterly along the arc of said curve, through a central angle of 16° 27' 35", a distance of 347.20 feet to a point; Thence run N. 0° 07' 44" W., crossing the aforesaid dividing line between Sections 3 and 34, parallel to the Westerly line of said Section 34, a distance of 2139.40 feet to the Point of Beginning (P.O.B.).

The gross area of the foregoing parcel is 161.444 acres, more or less.

Subject to that part of the 20-foot roadway right-of-way, South of, and adjacent to, the Northerly line of Section 3, contained within the foregoing description of the Land. Area of 20-foot right-of-way is 1.345 acres, more or less.

05-027-440/11*

## LEGAL DESCRIPTION OF A 137 ACRE PARCEL OF LAND

The 137 Acre Parcel of Land is located within the confines of a part of Tracts 1 through 9, inclusive, MIAMI GARDENS SUBDIVISION, recorded in Plat Book 2 at Page 96, and a part of the N.E. ¼ of the N.E. ¼ of Section 3, Township 52 South, Range 41 East, all in the Public Records of Dade County, Florida.

The 137 Acre Parcel of Land is also located within the confines of a Southerly part of the JOHN W. NEWMAN SUBDIVISION OF SECTION 34, Township 51 South, RANGE 41 East, Recorded in Plat Book 1, at Page 118, of the Public Records of Dade County, Florida. The exterior boundary of the said 137 Acre Parcel of Land being more particularly described as follows:

Commence at the S.W. corner of Section 34, said corner also being the N.W. corner of Section 3, and run N. 0° 07' 44" W. along the Westerly line of Section 34, a distance of 1944.71 feet to a point on the Southerly line of the South Florida Flood Control line of Snake Creek Canal; Thence run S. 86° 11' 45" E. along the Flood Control line, a distance of 984.74 feet to the Point of Beginning (P.O.B.) of the 137 Acre Parcel of Land hereinafter described; Thence continue S. 86° 11' 45" E., along the Flood Control line, a distance of 4312.48 feet to a point on the Easterly line of Section 34; Thence run S. 0° 00' 12" E. along the Easterly line of Section 34, a distance of 407.95 feet to a point; Thence run N. 86° 11' 45" W., parallel to the aforesaid Flood Control line, a distance of 1243.55 feet to a point; Thence run S. 0° 00' 12" E., parallel to the Easterly line of Section 34, crossing the dividing line between Sections 34 and 3, said dividing line contiguous one to the other, a distance of 1432.22 feet to a point on a circular curve concave Northwesterly and having a radius of 2103.495 feet; Thence run Southwesterly along the arc of said curve, through a central angle of 28° 16' 42", a distance of 1038.18 feet to the Point of Tangency (P.T.); Thence run S. 88° 45' 09" W., tangent to the last-mentioned curve and parallel to the Northerly line of Section 3, a distance of 400.00 feet to a point on the Westerly line of the N.E. ¼ of Section 3, said point being the beginning of a curve concave Northeasterly and having a radius of 1557.96 feet; Thence run Northwesterly along the arc of said curve through a central angle of 19° 06' 26", a distance of 519.55 feet to a Point of Reverse Curvature (P.R.C.) of a circular curve concave Southwesterly and having a radius of 1557.96 feet; Thence run Southwesterly along the arc of said curve, through a central angle of 19° 06' 26", a distance of 519.55 feet to the Point of Tangency (P.T.) of said curve; Thence run S. 88° 46' 51" W., tangent to the last-mentioned curve, parallel to the Northerly line of Section 3, a distance of 300.00 feet to a Point of Curvature (P.C.) of a circular curve concave Northeasterly and having a radius of 1208.58 feet; Thence run Northwesterly along the arc of said curve, through a central angle of 16° 27' 35", a distance of 347.20 feet to a point; Thence run N. 0° 07' 44" W., crossing the aforesaid dividing line between Sections 3 and 34, parallel to the Westerly line of said Section 34, a distance of 2139.40 feet to the Point of Beginning (P.O.B.).

86

The gross area of the foregoing parcel is 161.444 acres, more or less.

LESS and Excepting therefrom the following:

Commence at the Southwest corner of said Section 34; Thence run N. 0° 07' 47" W. along the West line of said Section 34, for 1944.66 feet (Deed) (1944.71 feet, Computed) to a point on the next described line; Thence run S. 86° 11' 46" E. along the South Right-of-Way line of Snake Creek Canal for 1912.02 feet to the Point of Beginning (P.O.B.); Thence continue S. 86° 11' 45" E. along the last-described course for 481.02 feet; Thence run S. 37° 55' 40" E. for 1042.98 feet, radial to the next-described curve; Thence run Southwesterly along a circular curve to the left, having a radius of 900.00 feet, and a central angle of 26° 12' 32" for an arc distance of 411.69 feet; Thence run N. 86° 11' 45" W. for 940.34 feet; Thence run N. 3° 48' 14" E. at right angles to the last-described course for 1111.73 feet to the Point of Beginning (P.O.B.), lying and being in Dade County, Florida. Contains 22.747 acres, more or less.

SUBJECT TO:

That part of the 20-foot Roadway Right-of-Way, South of, and adjacent to, the Northerly line of Section 3, contained within the foregoing description of the 137 Acre Parcel of Land. Area of 20-foot Right-of-Way is 1.345 acres, more or less.

Net area of the 137 Acre Parcel of Land is 137.352 acres, more or less.

## LEGAL DESCRIPTION OF A 22 ACRE PARCEL OF LAND

Commence at the Southwest corner of said Section 34; Thence run N. 0° 07' 47" W. along the West line of said Section 34, for 1944.66 feet (Deed) (1944.71 feet, Computed) to a point on the next described line; Thence run S. 86° 11' 46" E. along the South Right-of-Way line of Snake Creek Canal for 1912.02 feet to the Point of Beginning (P.O.B.); Thence continue S. 86° 11' 45" E. along the last-described course for 481.02 feet; Thence run S. 37° 55' 40" E. for 1042.98 feet, radial to the next-described curve; Thence run Southwesterly along a circular curve to the left, having a radius of 900.00 feet, and a central angle of 26° 12' 32" for an arc distance of 411.69 feet; Thence run N. 86° 11' 45" W. for 940.34 feet; Thence run N. 3° 48' 14" E. at right angles to the last-described course for 1111.73 feet to the Point of Beginning (P.O.B.), lying and being in Dade County, Florida. Contains 22.747' acres, more or less.