372 So.2d 1115 (1979)
STATE of Florida and the Taxpayers, Property Owners, and Citizens of Sarasota County, Including Nonresidents Owning Property or Subject to Taxation Therein, et al., Appellants,
v.
SARASOTA COUNTY, Florida, a Political Subdivision of the State of Florida, Appellee.
No. 54382.
Supreme Court of Florida.
June 28, 1979.
*1116 James A. Gardner, State's Atty., and Emanuel LoGalbo, Jr., Asst. State's Atty., Sarasota, and Robert A. Dickinson, Englewood, for appellants.
Richard E. Nelson of Nelson Hesse Cyril Weber & Smith, Sarasota, for appellee.
OVERTON, Justice.
This is a direct appeal from a final judgment validating revenue bonds in Sarasota County. We have jurisdiction.[1] The primary issue we must decide is whether section 125.01(q), Florida Statutes (1977), which authorizes the creation of special taxing districts, prohibits or restricts a chartered county from using revenue funds generated from franchise fees collected countywide to finance capital improvements within the special district. We find section 125.01(q) provides an additional method of financing capital improvements and was not intended to limit the general financing authority of a chartered county.
Sarasota County, in these proceedings, seeks validation of franchise tax revenue bonds not to exceed $1,925,000 which are secured by a pledge of fees derived from a franchise granted by the county to Florida Power and Light Company. The authorizing ordinance further provides that these bonds shall not constitute general obligations or indebtedness as "bonds" within the meaning of the constitution but shall be payable solely from franchise taxes.
The authorizing documents providing for the issuance of the subject franchise tax revenue bonds specifically describe the project to be financed as follows:
1. Extension of the District water system to the Sarasota Springs area within the District.
2. Acquisition and installation of auxiliary pumps for the District water system.
3. Repayment of $300,000 advanced by the issuer to finance the cost of certain improvements in the District water system.
4. Fully funding the reserve account created and established for the benefit of the holders of the outstanding General Obligation Water Bonds, Series 1973, of Special Utility District No. 1 in the issuer [sic] dated June 1, 1973.
Previously, in 1973, the board of county commissioners created Sarasota County Utility District No. 1 pursuant to section 125.01, Florida Statutes. This district includes part but not all of the unincorporated area of Sarasota County. The authorizing ordinance stated that the cost of construction of a water system within the district should be financed in whole or in part by issuance of bonds payable from revenues derived from the system and, in event of deficiency, from ad valorem taxes. The board of county commissioners is the governing body of the district as well as the governing body of the county.
The trial court found that Sarasota County had proceeded properly under chapter 75, Florida Statutes, complying with each provision thereof, and further specifically found that the bonds are revenue bonds to be secured by a pledge of franchise fees derived from Florida Power and Light Company and, as such, are not bonds within the meaning of article VII, section 12, Florida Constitution, and therefore are not required by the constitution to be approved in an election by the qualified electors of Sarasota County. The trial court further found that:
Sarasota County is authorized to issue said revenue bonds, for the purpose of acquiring, constructing, furnishing, equipping, expanding, reconstructing and refinancing county capital projects, including but not limited to, the use of said bond proceeds for the purpose of refunding any bonds or other obligations issued for such purposes, the county being specifically authorized to issue bonds from *1117 time to time, the proceeds of which may be expended in any part of the county or in any district now in existence or hereafter created by the county. The proceeds of such revenue bonds may be used and deposited in the sinking fund or reserve account therein established for the payment of any bonds heretofore issued by any district heretofore created....
The court expressly determined that the authorizing ordinances were constitutional and legally proper.
The state attorney contends the bond validation should be denied on the following grounds: First, by creating Special Utility District No. 1 in 1973, pursuant to chapter 125, Florida Statutes, Sarasota County is precluded from using general revenues of the county to finance a revenue bond issue designed to exclusively benefit the special district. The state attorney further asserts that the instant franchise tax revenue bonds are county revenue bonds, governed by chapter 153, Florida Statutes, and cannot be used to provide funds exclusively for the benefit of the existing special district. Second, the state attorney contends that use of general revenues to finance a county revenue bond issue, where proceeds of the bond issue are to exclusively benefit a special utility district, is impermissible because no valid "county purpose" is served. Third, he maintains that instant bond issue will violate preexisting district obligation bond covenants, prior county revenue bond covenants, and therefore the instant bonds should not be validated. This final issue was never presented to the trial court and is raised for the first time on appeal.
We reject all of the contentions of the state attorney and find that this bond issue is proper in all respects.
The purpose of chapter 125 is to allow counties to designate a limited geographic area as a special taxing district and thereby permit that limited geographic area to pay for its own improvements. Once a special taxing district is created, however, counties are not required to finance construction of capital improvements exclusively through the enabling legislation. Rather, the counties retain their power to construct capital improvements within special taxing districts and provide for their payment under their general county financing authority. To hold, as the state attorney urges us to do, that once a county has established a special taxing district it must exclusively look to chapter 125, Florida Statutes, to finance additional capital improvements within the district, would severely limit the county in the orderly development of utility services. Further, the establishment of a municipal special taxing unit under section 125.01(q) would, in fact, become a hindrance rather than a beneficial financing device or vehicle. The contention that by creating the special taxing district the county is now estopped from using other methods of financing is not reflected in any way in the legislation and, in our view, is totally without merit.
We reject the appellant's second contention that the project does not constitute a valid county purpose because it will benefit only a limited number of county residents. We reach this conclusion for two reasons. First, special taxing districts are essentially financing vehicles rather than full-fledged political entities. See generally Gallant v. Stephens, 358 So.2d 536 (Fla. 1978). Thus, the use of county revenues to help finance projects within an intra-county special district does not per se lack a valid public purpose. Second, many capital improvements undertaken by county governments directly benefit only a limited geographic area within the county. For example, in State v. Alachua County, 335 So.2d 554 (Fla. 1976), we affirmed a trial court order validating certain special obligation bonds. One challenge raised in that case by the state attorney was that the project undertaken served no valid county purpose. The projects contemplated included, inter alia, road paving projects, development of a recreational area, and improvement of a boys' club. Id. at 556. Each of these projects which we found served a valid county purpose arguably would primarily benefit only those living in close proximity to the project. We therefore refuse to say that the instant project serves no valid *1118 county purpose. We agree with the trial judge that the expenditure for capital projects, the decision as to their location, and the method of financing to be used are necessarily policy decisions for the issuing authority. The judiciary under the facts of this case has no authority to intrude into that political decision.
Under the existing law the function of this Court in a bond validation proceeding is to determine that the authorizing body has the power to act and that it exercises that power in accordance with the intent and purpose of the law.
Finally, we find the assertion, raised for the first time in this Court, that the instant bond issue will violate prior bond covenants is not a proper issue for determination in this proceeding, and the contention is rejected. See Speer v. Olson, 367 So.2d 207, 210 (Fla. 1979); State v. City of Sunrise, 354 So.2d 1206, 1210 (Fla. 1978).
We find the trial judge was correct in holding that the proposed issue of bonds was authorized by law, and his final judgment validating the bonds is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, SUNDBERG and HATCHETT, JJ., concur.
ALDERMAN, J., dissents.
NOTES
[1] Art. V, § 3(b)(2), Fla. Const.