Mr. Randy Ludacer Monroe County Attorney 310 Fleming Street, Second Floor Key West, Florida 33040
Dear Mr. Ludacer:
You have asked for my opinion on substantially the following question:
May the Monroe County Commission loan monies to a municipal service benefit unit (MSBU) and require that such monies be repaid to the county upon collection by the MSBU?
In sum:
The Monroe County Commission may loan county monies from the appropriate county fund to a municipal service benefit unit for road reconstruction projects that serve a county purpose or a dual county and special district purpose and may require, as a term of the loan agreement, that such amounts be repaid upon their collection from property owners within the unit.
According to your letter, the Monroe County Commission has created, by ordinance, a municipal service benefit unit (an MSBU) under the authority granted in s. 125.01(1)(q), Fla. Stat. (1991). This district was created for the purpose of reconstructing deteriorated county streets within a small subdivision. When the MSBU was created the county made a decision to forego the use of s. 197.3632, F.S. (1991), which authorizes the county to place the special assessments on the tax roll and enforce their payment through the sale of tax certificates.
A number of property owners within the MSBU are late or delinquent in paying the special assessment. However, as a result of foregoing the use of s. 197.3632, F.S. (1991), the county is concerned about the length of time it will take to collect delinquent special assessments and would like to proceed with reconstruction of the roads within the MSBU. The county has sufficient uncommitted local option gas tax and constitutional gas tax revenues on hand to cover all outstanding costs of the reconstruction of the roads within the MSBU.[1] Although the county could use these revenues to supplement the MSBU budget, the county desires to have the gas tax funds reimbursed upon the payment or collection of the special assessments from the property owners in the MSBU. You are concerned that previous opinions of this office would prohibit the loan and reimbursement of county funds to the MSBU.[2]
Section 125.01(1)(q), Fla. Stat. (1993), authorizes the legislative and governing body of a county to, in part:
Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, indigent health care services, mental health care services, and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only.
Pursuant to s. 125.01(2), Fla. Stat. (1993), "[t]he board of county commissioners shall be the governing body of any municipal service taxing or benefit unit created pursuant to paragraph (1)(q)."[3]
In Attorney General Opinion 89-84 (1989) this office was asked to consider whether the revenues collected from service charges, special assessments or taxes collected by an MSBU could be supplemented with county funds. Specifically, the county commission asked whether a county employee could perform work for a municipal service benefit unit created to provide county-wide ambulance service. An additional question was whether the county was authorized to purchase an ambulance or other equipment for the use of the MSBU and make direct cash contributions to the benefit unit. In reaching a conclusion, this office examined the case of State v. Sarasota County.[4]
In that case The Supreme Court of Florida concluded that the creation of a special taxing district provides counties with an additional method of financing and does not otherwise limit the general financing authority of the county. Thus, based on the rationale of State v. Sarasota County, a county could financially assist special districts providing services that benefit all of the county. However, the Court pointed out that the determination of whether such an expenditure serves a county purpose must be made by the governing body of the county.[5] In response to the specific questions posed in Attorney General Opinion 89-84 (1989), it was concluded that the county, after determining that a county purpose would be served, was authorized to financially assist the special district created to provide countywide ambulance service. Thus, the county could share a county-paid employee with the municipal service benefit unit, provide an ambulance or other equipment, or make a direct cash contribution to the unit if such provisions were determined to serve a valid county purpose.
The 1989 opinion makes it clear that a determination must be made by the county commission that a payment of county funds to an MSBU will serve a county purpose or a dual purpose of the county and the MSBU.[6] If, under the scenario you have presented, the county made a determination that loaning money to the MSBU would serve such a purpose the county could financially assist the special district by advancing monies from the county road and bridge account with the requirement that such amounts be repaid upon their eventual collection from property owners within the MSBU.[7]
While the county may not have contemplated these expenditures in its budget for the current fiscal year, section 129.06(2), Fla. Stat. (1993), authorizes the board of county commissioners at any time within the year to amend its budget for that year by decreasing appropriations for expenditures in any fund and correspondingly increasing appropriations for other expenditures in the same fund.
Therefore, it is my opinion that the Monroe County Board of County Commissioners may supplement the budget of the MSBU it has created to reconstruct roads within a subdivision after determining that a county purpose or a dual county/MSBU purpose is satisfied, and may require that such funds be repaid to the county upon their eventual collection from property owners within the MSBU.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, e.g., s. 336.021(3), Fla. Stat. (1993), which states that "the establishment, operation, and maintenance of a transportation system and related facilities and the acquisition, construction, reconstruction, and maintenance of roads and streets fulfill a public purpose and that payment of the costs and expenses therefor may be made from county general funds, special taxing district funds, or such other funds as may be authorized by special or general law."
[2] See, Op. Att'y Gen. Fla. 81-13 (1981) (a board of county commissioners is not authorized by law to loan county funds to a separate and distinct special tax district established and located within the county to be expended solely for district purposes).
[3] Compare, s. 125.01(5), Fla. Stat. (1993), which authorizes counties to create special districts whose governing bodies "shall be composed of county commissioners and may include elected officials of the governing body of an incorporated area included in the boundaries of the special district[.]"
[4] 372 So.2d 1115 (Fla. 1979).
[5] Id., at 1117.
[6] I would note that, pursuant to s. 125.01(1)(m), Fla. Stat. (1993), the governing body of a county has the power to provide and regulate roads.
[7] Cf., s. 129.06(2)(a), Fla. Stat. (1993), authorizing the board of county commissioners at any time within a fiscal year to amend a budget for that year by decreasing appropriations for expenditures in any fund and correspondingly increasing appropriations for other expenditures in the same fund. This may be accomplished by a motion recorded in the minutes but the total of the appropriations of the fund may not be changed.