Mr. Randy Ludacer Monroe County Attorney 310 Fleming Street, Room #29 Key West, Florida 33040
Dear Mr. Ludacer:
You ask for my opinion on substantially the following questions:
1. Is Monroe County authorized to provide pensions to volunteer firefighters of a municipal services benefit unit (MSBU) either under statute or as a matter of home rule?
2. If the answer to Question One is in the affirmative, is the county authorized to deposit the funds set aside for future pension payments in a trust fund to be managed by trustees appointed by the Monroe County Commission?
3. Is Monroe County authorized to provide benefits to be paid for services rendered prior to the effective date of the pension plan for volunteer firefighters of such an MSBU?
In sum:
1. The Monroe County Commission is authorized to provide pensions to volunteer firefighters of a municipal services benefit unit if the county commission determines that such an expenditure of county funds would serve a county purpose or a dual county and special district purpose.
2. The Monroe County Commission may earmark certain monies for future pension payments to volunteer firefighters of MSBUs but may not delegate the management of such a fund other than as provided by statute.
3. Monroe County is not authorized to provide benefits in consideration of services rendered prior to the effective date of the pension plan for volunteer firefighters of the municipal service taxing unit.
Monroe County, which is a non-charter county, has created several municipal service taxing units pursuant to section 125.01(1)(q), Florida Statutes, for the purpose of providing fire protection services in the unincorporated areas of the county. The service itself is provided by volunteers within each unit. At this time, the county has only provided reimbursement of expenses and training costs.
However, Monroe County is currently considering providing its volunteer firefighters a type of pension. It has been proposed that after a given number of years of volunteer service and the attainment of a certain age, an individual could "retire" and receive a "length of service award" in the form of a series of payments made over a ten year period in the nature of a pension. Funds for these pensions would be set aside by the county out of the yearly ad valorem levy imposed in the various units. The funds would be deposited in a trust to be managed by trustees appointed by the county commission, until such time as the funds are needed to make the pension payments. The intent is to make the pension fund actuarially sound as required by Article X, Section 14, Florida Constitution.
Question One
Section 125.01(1)(q), Florida Statutes, authorizes the legislative and governing body of a county to, in part:
Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, indigent health care services, mental health care services, and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only.
Pursuant to section 125.01(2), Florida Statutes, "[t]he board of county commissioners shall be the governing body of any municipal service taxing or benefit unit created pursuant to paragraph (1)(q)."[1]
In a 1989 opinion, this office considered whether the revenues collected from service charges, special assessments or taxes collected by an MSBU could be supplemented with county funds.[2]
Specifically, the county commission asked whether a county employee could perform work for a municipal service benefit unit created to provide county-wide ambulance service. In addition, the county asked whether it was authorized to purchase an ambulance or other equipment for the use of the MSBU and make direct cash contributions to the benefit unit.
In concluding that the county was authorized to financially assist the special district, this office relied on the case of State v. Sarasota County.[3] In the Sarasota County case, the Supreme Court of Florida concluded that the creation of a special taxing district provides counties with an additional method of financing and does not otherwise limit the general financing authority of the county.
Thus, based on the rationale of this case a county could financially assist special districts providing services that benefit all of the county. However, the court pointed out that the determination of whether such an expenditure serves a county purpose must be made by the governing body of the county.[4]
Similarly, the 1989 opinion concluded that a county, after determining that a county purpose would be served, was authorized to financially assist the special district created to provide countywide ambulance service, i.e., the county could share a county-paid employee with the municipal service benefit unit, provide an ambulance or other equipment, or make a direct cash contribution to the unit if such provisions were determined to serve a valid county purpose.[5]
This office has consistently advised county governments that a determination must be made by the county commission that a pay-ment of county funds to an MSBU will serve a county purpose or a dual purpose of the county and the MSBU.[6] Therefore, if, under the plan you have presented, the county makes a determination that funding a pension plan for the volunteer firefighters of MSBUs would serve a county or dual purpose, based upon legitimate legislative findings, such payments would be authorized.
Question Two
Your second question deals with the ability of a county to create a trust fund and then delegate management of the trust fund to trustees.
Chapter 129, Florida Statutes, which establishes and regulates a budget system for counties, recognizes the authority of counties to designate certain receipts that are to be expended for a particular purpose.[7] These statutes also require that investments be carried at cost as a separate item in fund balances.[8] Thus, funds may be earmarked for particular purposes, and to the extent that they are surplus funds they may be invested as authorized by statute.
Section 125.31(1), Florida Statutes, requires that:
Unless otherwise authorized by law or by ordinance, the board of county commissioners shall, by resolution to be adopted from time to time, invest and reinvest any surplus public funds in its control or possession in: (a) The Local Government Surplus Funds Trust Fund; (b) Negotiable direct obligations of, or obligations the principal and interest of which are unconditionally guaranteed by, the United States Government at the then prevailing market price for such securities; (c) Interest-bearing time deposits or savings accounts in banks organized under the laws of this state, in national banks organized under the laws of the United States and doing business and situated in this state, in savings and loan associations which are under state supervision, or in federal savings and loan associations located in this state and organized under federal law and federal supervision, provided that any such deposits are secured by collateral as may be prescribed by law; (d) Obligations of the federal farm credit banks; the Federal Home Loan Mortgage Corporation, including Federal Home Loan Mortgage Corporation participation certificates; or the Federal Home Loan Bank or its district banks or obligations guaranteed by the Government National Mortgage Association; (e) Obligations of the Federal National Mortgage Association, including Federal National Mortgage Association participation certificates and mortgage pass-through certificates guaranteed by the Federal National Mortgage Association; or (f) Securities of, or other interests in, any openend or closed-end management type investment company or investment trust registered under the Investment Company Act of 1940, 15 U.S.C. ss. 80a-1 et seq., as amended from time to time, provided the portfolio of such investment company or investment trust is limited to United States Government obligations and to repurchase agreements fully collateralized by such United States Government obligations and provided such investment company or investment trust takes delivery of such collateral either directly or through an authorized custodian.
Thus, the county commission may exercise its discretion in choosing into which types of instruments or obligations the county's surplus funds should be invested.[9] However, nothing in this section, or any other provision of the statutes, authorizes a county commission to delegate its power to control the investment of surplus funds. To appoint an independent trustee to make such investments of surplus county funds would present a conflict with the provisions of section 125.31, supra.[10]
Therefore, it is my opinion that the Board of County Commissioners of Monroe County may earmark surplus funds for future pension payments and may invest those funds as directed by section 125.31, Florida Statutes. However, the county commission is not authorized to appoint an independent trustee to manage such a fund.
Question Three
Section 215.425, Florida Statutes, provides in part that "[n]o extra compensation shall be made to any officer, agent, employee, or contractor after the service has been rendered or the contract made. . . ." Extra compensation generally refers to an additional payment for services performed or compensation over and above that fixed by contract or by law when the services are rendered.[11]
This provision implements a basic and fundamental principle, included in Florida's Constitution,[12] that public funds may be used only for a public purpose. Thus, retroactive extra compensation, lump sum allowances or other forms of compensation not provided by law or contract are prohibited by s. 215.425, Florida Statutes,[13] in the absence of a statutory exemption or specific authorization for such payments.
I would note that the Legislature has adopted an exemption to the general prohibition set forth in section 215.425, Florida Statutes, for both county and municipal employees. The statute provides that "[t]he provisions of this section . . . do not apply to extra compensation given to county or municipal employees pursuant to policies adopted by county or municipal ordinances."[14]
Volunteer firefighters serving municipal service benefit units do not appear to be county employees but would be more in the nature of special district workers. While it is clear that the Legislature has authorized retroactive extra compensation for other local governmental entities, no mention is made of special districts such as municipal service benefit units.[15]
Therefore, in the absence of specific legislative authority, it is my opinion that Monroe County may not extend pension benefits retroactively for services that have been rendered prior to the effective date of such a plan.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Compare, s. 125.01(5), Fla. Stat. (1993), which authorizes counties to create special districts whose governing bodies "shall be composed of county commissioners and may include elected officials of the governing body of an incorporated area included in the boundaries of the special district[.]"
[2] See, Op. Att'y Gen. Fla. 89-84 (1989).
[3] 372 So.2d 1115 (Fla. 1979).
[4] Id. at 1117.
[5] And see, Op. Att'y Gen. Fla. 94-22 (1994), in which this office advised the Monroe County Commission that it was authorized to loan county funds to a municipal service benefit unit for road reconstruction projects that serve a county purpose or a dual county and special district purpose and may require that such monies be repaid upon their collection from property owners within the unit.
[6] See, e.g., Ops. Att'y Gen. Fla. 94-22 (1994) and 89-84 (1989).
[7] Section 129.03(3)(a), Fla. Stat. (1993).
[8] Section 129.06(1)(b), Fla. Stat. (1993).
[9] See, Op. Att'y Gen. Fla. 79-9 (ss. 125.31 and 218.407, Fla. Stat., authorize boards of county commissioners to invest a county's surplus funds in certain enumerated investments; however, s. 125.31 does not authorize such boards to delegate their statutorily prescribed investment authority to the clerk of the circuit court, or to make the boards' investments with `local banking institutions,' except for `Bank trust receipts' as specified in paragraph[2][b] of s. 125.31).
[10] Cf., Board of County Commissioners of Marion County v. McKeever, 436 So.2d 299, 301 (Fla. 5th DCA 1983) (a county ordinance is inconsistent or conflicts with general law if the ordinance and the legislative provision cannot co-exist).
[11] See, e.g., Ops. Att'y Gen. Fla. 93-13 (1993), 89-53 (1989), and 75-279 (1975). See generally, 67 C.J.S. Officers s. 236.
[12] See, Art. VII, s. 10, Fla. Const. 
[13] See, e.g., Ops. Att'y Gen. Fla. 89-53 (1989), 86-53 (1986), and 85-57 (1987).
[14] And see, s. 125.01(1)(bb), Fla. Stat. (1993), which authorizes the governing body of a county to "provide for an extra compensation program, including a lump-sum bonus payment program, to reward outstanding employees whose performance exceeds standards, if the program provides that a bonus payment may not be included in an employee's regular base rate of pay and may not be carried forward in subsequent years."
[15] Cf., Op. Att'y Gen. Fla. 93-13 (1993) (water management district not authorized to pay its employees a lump sum bonus based on employee's performance during previous six months).